## Jones *v*. Hines.

*Damages for Permitting Stock to Run at Large.*

(Decided Nov. 25, 1908. 47 South. 739.)

1. *Municipal Corporations; Ordinances; Powers; Presumption.*— The Act of Oct. 1, 1903, (General Acts 1903, p. 365) relates only to cities of a certain class, and the courts cannot presume in support of the ordinance that the city adopting such an ordinance belongs to that class, especially where the only evidence within the court's judicial knowledge shows to the contrary.

2. *Animals; Restraint; Remedy.*—Where an ordinance was passed under the General Act of 1903, prescribing fees for releasing stock taken up, and authority to sell it on default of payment thereon, both the ordinance and the act are directed against the animal, and not against the owner, save as he may be affected by the sale of it, and, therefore, does not subject the owner to personal liability for damages done by such stock.

3. *Municipal Corporations; Ordinances; Violation; Extra Territorial Effect.*—Where one permits stock to run at large outside the city limits which stray within the city and commit damages, such non-resident did not incur a liability for civil damages, since the ordinance prohibited the running at large of stock within the city was not effectual outside the limits of the city.

APPEAL from Etowah Circuit Court.

Heard before Hon. JOHN W. INZER.

[Jones v. Hines.]

Action by J. H. Hines against E. C. Jones. Judgment for plaintiff, and defendant appeals. Reversed and re. manded.

GOODHUE & BLACKWOOD, for appellant. The common, law prohibiting all stock from running at large never obtained in Alabama.—*Hurd v. Lacy,* 93 Ala. 428; *A. G. S. R. R. Co. v. Jones,* 71 Ala. 487. A lawful fence and failure to have one is defined by statute.—Secs. 4240 and 4245, Code 1907. Courts take judicial notice of the Federal Census, and act thereon.—*Hawkins v. Thomas,* 3 Ind. App. 409; *State v. County Court,* 128 Mo. 427; *People v. Wiliams,* 64 Cal. 87. Gadsden falls in the class of cities not enumerated in the Acts 1903 or Sec. 2115, Code 1896.—*Adams v. Elwood,* 176 N.Y. 106. It is certain that the pretended ordinance of the city of Gadsden fixed no civil liability.—21 A. & E. Ency. Law, 1000; 48 N. E. 446; 40 Md. 312; 17 Amer. Rep. 603; 45 Mich. 74; 89 Pa. St. 71; 14 Gray 249.

O. B. ROPER, for appellee. Our contention is that this action is maintainable, and that appellant's objection to the introduction of the city ordinance prohibiting stock from running at large was without foundation.—*Ryall v. Allen,* 143 Ala. 222; *Joiner v. Winston,* 68 Ala. 132. The presumption is in favor of the validity of the ordinance. Abbott Mun. Corporations, p. 1315. A municipal corporation has the right under its power of police regulation, to pass ordinances prohibiting stock of all kinds from running at large within its corporates limits. And we might add also, that such an ordinance will apply to animals the owner of which resides inside or outside of the corporate limits of such municipality.—Abbot, on Municipal Corporations, Page 2064, § 873; Abbott, on Municipal Corporations, page

40 R

270 & Notes; *Folmer v. Curtis*, 86 Ala. 354; *Mathis v. Jones*, 84 Ga. 804; *Shepherd v. Hees*, 12 Johns. N. Y. 432; *Jones v. Duncan*, 127 N. C. 118; *City of Waco v. Powell*, 32 Tex 258; *Kelly v. City of Milwaukee*, 18 Wis. 83.

SIMPSON, J.—This suit was brought by the appellee against the appellant. The allegations of the amended complaint are, in substance, that defendant unlawfully permitted his hogs to run at large, and destroy plaintiff's corn, etc., in Gadsden, "a district in which it is unlawful for hogs to run at large," and thus caused damage to plaintiff.

The act of October 1, 1903, provided that "it shall be unlawful to permit any horse    *    *    *    hog," etc., "to run at large in any city or town of this State of five thousand inhabitants or more," and went on to provide that the governing bodies of such municipalities "are authorized and empowered and required" to adopt such ordinances as shall be necessary to prevent the running at large of stock therein, and to take up and impound the same.—Acts 1903, p. 365. The corporate authorities of the city of Gadsden passed an ordinance reciting the provisions of the act, and declaring it unlawful for any horse, mule, jenny, cow, hog, sheep, or goat to run at large within the corporate limits of said city. The second section of the ordinance provides for impounding stock found running at large in said city, and prescribes what fees shall be paid for releasing such stock, in default of which the stock may be sold.

The bill of exceptions shows that the defendant resides in the country outside the corporate limits of Gadsden, and that his hogs were found in the garden of the plaintiff, having destroyed a part of the vegetables, etc., growing therein. Although neither the act of the Legislature not the city ordinance intimates any liability

[Jones v. Hines.]

on the part of the owner of the stock, save the liability to have his stock impounded and sold, yet the plaintiff relies upon the principle that the law has made it unlawful to permit such stock to run at large, and that, therefore, the defendant is liable because he violated the ordinance by permitting his hogs to run at large in said city, and is consequently liable in damages for the resultant injury.

There are several considerations which prevent the operation of such a principle. In the first place, the last federal census shows that Gadsden had much less than 5,000 population, and there is no evidence tending to show that it has now any more. Appellee claims that the ordinance is presumed to be valid, but the ordinance does not even recite the fact that said city has that large a population; and, when the act relates only to cities of a certain class, the court cannot presume that a given city belongs to that class against the fact that the only evidence within judicial knowledge shows that it does not.—*Adams v. Elwood*, 176 N. Y. 106, 68 N. E. 126. It cannot be said that the act itself fixes any liability on the defendant, for the act is directed at the city authorities, and evidently means that it shall be unlawful for them to permit the stock to run at large, and places upon said authorities, not the duty of punishing personally those whose hogs run at large, but merely the duty of making laws for impounding the stock. In other words, both the act and the ordinance are directed against the animal, and not against the owner except as he may be affected by the taking and selling of his animal. In the next place, the city has and can have jurisdiction only within its own limits. While it is true that police powers may sometimes be given for a limited space around the city limits for special purposes, yet they must be specially given, and with that exception the principle is universal that a city has no jurisdiction beyond its

limits. 28 Cyc. 703; 20 Am. & Eng. Ency. Law, 1148. A learned writer has said that one of the distinguishing features of difference between the civil law of Rome and the common law of England is that the civil law acted personally, while the common law acts territorially. The civil law applied to every Roman citizen where-ever he was, and only a Roman citizen could claim the benefits of it, even in Rome, while the common law oper-ates on every person and thing in the territory, and on those only. The state can levy on a man's property found within the state, but there is no way by which it can fix a personal liability on him outside the state. So the city can impound animals of nonresidents found within its limits (as decided by our court in the case of *Folmer v. Curtis*, 86 Ala. 354, 5 South. 678), but it cannot reach out beyond its limits and fix a personal liability on one who resides in the country, for an act done there. It is stated also that "the only liability which attaches to the infraction of an ordinance is the penalty which it imposes. The mere fact that an ordi-nance has been violated cannot give rise to any civil lia-bility" (21 Am. & Eng. Ency. Law [2d Ed.] p. 1000); and some authorities have gone so far as to declare that municipal corporations have no authority to give a right of private action to any one. 28 Cyc. 830. However that may be, the Legislature and the city both seem to have kept well within the boundaries of the law, and have not attempted to act on anything but the property found within the limits of the city.

We hold, then, that the defendant, not being a resi-dent of the city, cannot be made liable in a civil action on account of his hogs having strayed into the city. It may be noted, also, that the evidence does not show that the defendant had any agency in allowing his hogs to run at large in the city. The passage of the ordinance

certainly could not have the effect of making every citizen in the country keep up his hogs, lest they might wander into the city. No limit could be fixed to the distance from which a hungry hog might wander. All that can be said is that the citizen in the country who allows his stock to run at large takes the chances of their being impounded if they wander into town.

In the case of *Vaughn v. Walker*, 133 Ala. 659, 31 South. 1038, not reported in full, in construing a statute which placed a penalty on persons "permitting" stock to run at large in a certain district, by which it was sought to make liable the stock of a party living outside the district because the same were found in the district this court said: "This provision was doubtless primarily directed against persons living or having their plantations and live stock within the district, though doubtless a person living or having his plantation and cattle outside the district would be amenable to the act if he permitted his live stock to go into it without control. But the idea of 'permitting' involves something more than such person would do in the mere exercise of his right—not affected by the statute—to turn his horses and cows, etc., on the commons beyond and outside of the district. * * * He would not fall under the penalties of the statute unless he did some affirmative active toward putting his cattle in the district, or at least turned them upon the commons with the intent that they should pass thence into the prohibited district, and the expectation that they would."

The defendant was entitled to the general charge as requested, and it is unnecessary to notice other errors.

The judgment of the court is reversed, and the cause remanded.

TYSON, C. J., and DENSON and McCLELLAN, JJ., concur.