AIME VALCOUR *v.* VILLAGE OF MORRISVILLE.

November Term, 1931.

Present: SLACK, MOULTON, THOMPSON, and GRAHAM, JJ., and
SHERMAN, Supr. J.

Opinion filed January 6, 1932.

*F. G. Fleetwood, Charles F. Black,* and *Guy M. Page,* for the defendant.

*Benjamin N. Hulburd* and *George L. Hunt* for the plaintiff.

SLACK, J. The action is tort. It is here on exceptions to the overruling of the demurrer to the replication.

The material allegations of the declaration are that the defendant is a municipal corporation lawfully engaged in the manufacture and sale of electricity for domestic and commercial purposes; that plaintiff owned a farm in Stowe with certain buildings and personal property thereon; that he was a customer of defendant at Stowe, and was furnished electricity by it in accordance with its schedule of rates, rules, and regulations then on file with the Public Service Commission, which provided, among other things: "Individual customers taking current from 11,000 volt transmission lines must pay the cost of service, connections and transformer, and the following rates:" etc; that defendant furnished plaintiff electric current from such a line; that it was necessary that defendant use a transformer, fuses, ground, etc., to reduce the voltage of such current before it passed from the main line to secondary lines; that the defendant undertook to furnish the necessary equipment and to service the same, and keep it in repair; that it thereby became the duty of defendant to perform its aforesaid undertaking in a careful and proper manner; that plaintiff knew nothing about the necessary equipment, but relied entirely upon defendant's knowledge and skill in that behalf, as it well knew; that defendant neglected to perform its aforesaid duty, in that it failed to have the transformer properly grounded and did not use proper fuses in connection with the transformer; that by reason thereof a high-voltage current passed over the secondary line to plaintiff's buildings and set them on fire, causing the damage complained of.

In its answer, the defendant in paragraph 1 denies that it owed plaintiff any duty respecting the selection, installation, and maintenance of the equipment in question. In paragraph 2 it denies that it had authority to sell electric current as the operator of a public utility outside its corporate limits; and alleges that its only authority to sell such current was by special contract, subject to its by-laws which provide: "The owner shall keep all fixtures and apparatus in good repair at all times and shall not allow any waste of water or lights on his premises. All persons taking either water or lights assume the risk of accidents and unavoidable shortages," and alleges that under such by-law the duty of installation, maintenance, etc., of all

equipment for secondary lines was upon the purchaser of current, and that he thereby assumed the risk of all accidents. The answer alleges in paragraph 3 that plaintiff owned the secondary line from the main line to his buildings; that he received the current at the line of defendant; that at the point of delivery the connection between the plaintiff's and defendant's lines was properly constructed and maintained; that it was plaintiff's duty to install and maintain his secondary line; and that, if he suffered the damages alleged, it was due to his neglect in so doing, and not to any shortage on the part of defendant.

The answer denies in paragraph 4 that the defendant had authority to engage in the business of wiring, or selecting and installing equipment, whether transformers, fuses, grounds, or other appliances for persons outside its corporate limits, or to inspect, maintain, repair, etc., such wires or equipment as plaintiff well knew, and that he was not entitled to rely upon its care and skill in those matters, as alleged in the declaration. It further denies it engaged to render the service respecting such secondary line as alleged by the plaintiff or that it had authority to do so; and alleges that any such acts done by others were not its acts, and were, as to it, *ultra vires*, for which it was not liable.

The answer alleges in paragraph 5 that the defendant performed its full duty, and did nothing more, respecting the wires, fixtures, and equipment whereby the current was received by the plaintiff.

The replication denies the allegations in paragraph 1 of the answer; denies the allegations in paragraph 2 respecting defendant's authority, if such allegations present an issue of fact; denies the pertinency of the by-law set forth therein, if such there be, and denies defendant's construction thereof. It denies the allegations in paragraph 3 of the answer that the plaintiff owned and was chargeable with the installation, maintenance, etc., of the equipment which caused the injury, and for a *distinct* reply thereto alleges that the defendant is estopped from disclaiming ownership of such equipment or the duty to maintain the same because at and for a long time before the injuries complained of it had maintained such equipment as its property and for its benefit, well knowing that it was supplying a current of dangerous voltage to the plaintiff, and that he had his buildings connected with defendant's main line and received electricity therefrom in reliance thereon, and that since the injuries

declared for defendant has removed and carried away and appropriated to its own use part of such equipment.

It denies the allegations in paragraph 4 of the answer, and for a distinct reply thereto alleges that defendant is estopped from claiming that its acts in maintaining, inspecting, etc., such equipment were in excess of its authority because at and for a long time before the injuries complained of it had extended its lines and equipment and thereby supplied current to persons, including the plaintiff, and to corporations far beyond its corporate limits, and had inspected, repaired, etc., such lines and equipment, and had thereby disposed of such electricity as was not required for its own and its inhabitants' use, and had made divers contracts to, and did, and still does, in the performance of such contracts transmit electricity outside its limits, and that during such time it has invoked the jurisdiction of the Public Service Commission for permission to deliver electricity outside its limits over and across the public highways, and has received and acted upon permission so obtained and continues so to do, and has filed and now maintains with such commission schedules of rates for electricity so delivered outside its limits, and in divers other ways has pretended to have, and has exercised, the right and power to deliver electricity and maintain transmission lines and equipment for so doing, outside its limits, all for its own benefit, and that plaintiff had his buildings connected with defendant's transmission line and equipment and admitted electricity over the same to his buildings, all in reliance on the power of defendant so by it pretended and exercised, as it well knew. The replication denies the allegations in the sixth paragraph of the answer.

The demurrer challenges the sufficiency of that part of paragraph 2 of the replication that denies the pertinency of the by-laws pleaded by defendant, and its construction thereof, on the ground that the allegations relative thereto present questions of law and not of fact. It challenges the sufficiency of that part of paragraph 3 of the replication that purports to be a *distinct* reply to paragraph 3 of the answer on the ground that the matter therein alleged is not sufficient to estop defendant to disclaim ownership to the transmission line on plaintiff's property, or estop it to claim that it had no duty respecting the maintenance and repair thereof, and is a departure from the declaration. It challenges the sufficiency of the first paragraph of

number 4 of the replication on the ground that it denies matters of law only, and not of fact. It challenges the sufficiency of that part of paragraph 4 of the replication that purports to be a *distinct* reply to paragraph 4 of the answer on the ground that the matters therein alleged are not sufficient in law to estop defendant to claim that the acts and matters alleged in para-, graph 4 of the answer were beyond its power.

The plaintiff insists that the demurrer was properly overruled because it does not distinctly specify the reason why the pleading demurred to is insufficient, as required by G. L. 1791, paragraph III, and attention is called to *Coates* v. *Eastern States Farmers' Exchange,* 99 Vt. 170, 130 Atl. 709, 713, where it is said that the object of this requirement is "to facilitate the framing of a definite issue, and to enable the party whose pleading is questioned seasonably to correct the fault by amendment." Without going into a lengthy discussion of the merits of the pleadings, it is enough to say that the demurrer sufficiently presents certain questions that are of vital importance to the determination of the case, namely, the materiality of the by-laws pleaded by the defendant, and whether in the circumstances the doctrine of *ultra vires* is available to it as a defense.

These questions are considered in inverse order.

The powers of a municipal corporation are tersely stated by Dillon in his work on Municipal Corporations (5th ed.), par. 237 in the language following: "It is a general and undisputed proposition of law that *a municipal corporation possesses and can exercise the following powers, and no others:* First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensable." Among the many cases that have adopted this statement of the law are *Farwell* v. *City of Seattle,* 43 Wash. 141, 86 Pac. 217, 10 Ann. Cas. 130; *Richards* v. *City of Portland,* 121 Ore. 340, 25 Pac. 326; *Donabee's Admr.* v. *Harrisonburg,* 104 Va. 533, 52 S. E. 174, 2 L. R. A. (N. S.) 910, 113 A. S. R. 1056, 7 Ann. Cas. 519; *Childs* v. *City of Columbia,* 87 S. C. 566, 70 S. E. 296, 34 L. R. A. (N. S.) 542; *Becker* v. *City of La Crosse,* 99 Wis. 414, 75 N. W. 84, 40 L. R. A. 829, 67 A. S. R. 874; *Dyer* v. *City of Newport,* 123 Ky. 203, 94 S. W. 25; *City of Sweetwater* v. *Hamner* (Tex. Civ. App.), 259 S. W.

191; *Hyre* v. *Brown,* 102 W. Va. 505, 135 S. E. 656, 49 A. L. R. 1239, and note. These cases hold that municipal corporations are confined in their operations to their own territorial limits, and that only when given special legislative power, express or necessarily implied, can they act beyond those limits.

██ ██ We are satisfied that the defendant has no legislative authority, express or implied, for the general distribution of electric current to parties outside its corporate limits. Its only authority to maintain and operate an electric light and power plant is found in Act No. 185, § 9, Laws 1894, and Act No. 313, § 16, Laws 1910. The former act authorizes it to "construct an electric light plant for the purpose of lighting the streets, walks and public grounds of said village and lighting any buildings therein," etc. The latter act empowers it to "construct and maintain an electric light plant for the purpose of lighting the streets, walks, and public grounds thereof, for lighting buildings and furnishing electricity for domestic and other purposes to such persons and corporations as it may desire," etc. Under the former it was authorized to furnish electricity for lighting purposes only; under the latter, it was given the additional right to furnish electricity for domestic and power purposes. That neither gave it the right, primarily, to extend its operations beyond its territorial limits seems free from doubt in view of the authorities above cited. See, also, *Village of Swanton* v. *Village of Highgate,* 81 Vt. 152, 69 Atl. 667, 16 L. R. A. (N. S.) 867. But if any fair, reasonable, substantial doubt exists concerning this question it must be resolved against the defendant, and its power denied. Dillon on Mun. Corp., *supra.*

If the defendant has authority to extend its operations beyond its territorial limits, it is by virtue of its *incidental* right to dispose of its surplus current, if it has any.

A large number of cases, including those cited above, are called to our attention in support of the proposition that a municipal corporation authorized to own and operate a public service utility has no power, in the absence of statutory authority, to furnish service beyond its corporate limits. But the question in issue in most of these cases was the general authority of a municipality to furnish water or electricity outside its borders, and not its incidental right to so dispose of its surplus. Since this is so, these cases are not regarded as denying to

municipalities the authority to exercise this incidental right outside their territorial limits.

Dillon on Municipal Corporations (5th ed.), vol. 3, par. 1300, after discussing the right of municipalities to dispose of surplus water says: "Within these principles too, where a city has an electric lighting plant which is capable without any increased expense, except a small additional expense for fuel, of furnishing light to a very much larger number of customers than it has, it may, by contract, agree to *extend its electric light service* to points beyond the city limits, if its action does not materially impair the usefulness of its plant for the purpose for which it was primarily created."

We recognized the incidental right of a municipality to rent such part of its town hall as was not required for present purposes in *Bates* v. *Bassett*, 60 Vt. 530, 15 Atl. 200, 1 L. R. A. 166, and the right of a municipality to dispose of its surplus water in *Lucia* v. *Village of Montpelier*, 60 Vt. 537, 15 Atl. 321, 1 L. R. A. 169. To the same effect are *Worden* v. *New Bedford*, 131 Mass. 23, 41 A. R. 185; *Mayo* v. *Village Fire Co.*, 96 Me. 539, 53 Atl. 62; *Milligan* v. *Miles City*, 51 Mont. 374, 153 Pac. 276, L. R. A. 1916C, 395. None of these cases, however, except the last, involves the acts of a public utility, and in none of them was the right exercised outside the corporate limits. In *City of Henderson* v. *Young*, 119 Ky. 224, 83 S. W. 583, and in *Rogers* v. *Wickliffe* (Ky.), 94 S. W. 24, the right of a municipality to sell surplus water or electricity to persons outside its limits was upheld, but in those cases the surplus was delivered at the municipal plant, and in *Dyer* v. *City of Newport*, *supra*, it was held that the municipality had no power to extend its equipment beyond its limits for the purpose of disposing of its surplus. The opposite view is taken in *Muir* v. *Murray City*, 55 Utah, 368, 186 Pac. 433; *Larimer County* v. *Fort Collins*, 68 Colo. 364, 189 Pac. 929; *Colorado Springs* v. *Colorado City*, 42 Colo. 75, 94 Pac. 316, and *Pike's Peak Power Co.* v. *Colorado Springs* (C. C. A.), 105 Fed. 1.

■ ■ In acquiring and operating any kind of a public utility a municipal corporation acts in its private or proprietary as distinguished from its public or governmental capacity, since the furnishing of water or lights to its inhabitants is in no sense a governmental function. It holds the property comprising such utility, primarily, for its own and its inhabitants' use. If

the operation of the utility for the primary object for which it is created produces a surplus of water, light, etc., dictates of common business prudence require that it be disposed of and its proceeds devoted to the use of the municipality or its inhabitants. That it has the right to dispose of such surplus within its corporate limits without special legislative authority, we entertain no doubt; and we see no logical reason why it may not likewise dispose of such surplus outside its limits, since its right to do so in either case is purely incidental to the primary object for which it was created, and in neither is it discharging a governmental function.

██ We hold, therefore, that the defendant had the right to dispose of its surplus electricity outside its own limits and to extend its equipment as might be necessary for that purpose. The word *surplus* is here used in its strict legal sense, and not as a justification for any unwarranted acts. The contrary not appearing we assumed that such was the extent of defendant's operations outside its limits, since it will not be presumed that it acted unlawfully. Such, too, appears to be the understanding of the parties respecting the situation.

█ In such operations the defendant was not acting as a public utility, but its relations with its customers were purely contractual.

█ Its right to contract for the sale of its surplus current carried with it the corresponding liability to perform such contract as it made or respond in damages for failure so to do. It could not take the benefit of such contract and escape liability for its performance on the ground that it had no authority to make it, because as to such contract it did have authority. Indeed, it was the only way in which it could exercise its incidental right to sell its surplus:

██ The defendant maintains that it had no authority as a public utility to operate outside its limits. We agree. It maintains that it had no special legislative authority to act outside its limits. We agree. It insists that it had no authority to operate outside its limits except by special contract and subject to the provision of its by-laws above quoted. We agree that it had no authority to operate outside its limits except by contract; but its by-law, as such, had no force outside its limits, unless actually embodied in the terms of the contract. *Incorporated Town, etc.* v. *Ocheyedan Elec. Co.*, 194 Iowa, 950,

187 N. W. 560; *City of South Pasadena* v. *Los Angeles Ter. Co.*, 109 Cal. 319, 41 Pac. 1093; *Jones* v. *Hines*, 157 Ala. 624, 47 So. 739. Ordinances and by-laws of a municipal corporation have no extraterritorial force, unless otherwise expressly provided by statute. No such provision is claimed in the instant case.

But assuming that such by-law is effective, as to outside parties, the defendant is no better off, since it does not bear the construction that is claimed for it. The provision relating to repairs obviously means no more than that the consumer shall keep his own equipment in such condition as to prevent the needless loss of water or electricity. It is equally clear that the provision relating to the assumption of risks of accidents and unavoidable shortages was intended to relieve defendant from liability for any unforeseen or accidental interruption of service due to the break-down of its plant, equipment, etc., rather than to absolve it from liability for damages resulting from the negligent performance of its contract.

The authority of defendant in general to install and service plaintiff's private equipment, and its liability resulting from defects therein has received much attention by counsel. But we confine our inquiry to defendant's authority respecting the installation and maintenance of the transformer which was used to reduce the current where it passed from the high to the low voltage line, and the equipment used in connection therewith, since it is concerning these only that negligence is charged. The right to sell its surplus current undoubtedly gave defendant authority to deliver it in saleable quantities and to do whatever was necessary to enable it to deliver it in such quantities. In view of the dangerous character of the commodity, it is hardly conceivable that a consumer would undertake to install and service the equipment necessary to put it in usable form, or that the vendor would expect or permit him to do so. But as we have seen the rights and liabilities of the parties depend entirely upon their contract express or implied. If under the terms thereof the plaintiff was to install and service the transformer and its equipment, the defendant is not liable; if on the other hand, the defendant was to do this work, and through its negligence damage resulted, it is liable. The fact that plaintiff paid for the transformer, and the cost of installing and maintaining the same if such is the fact, is not determinative of the

rights and liabilities of the parties, although it may have a bearing on the question of what the contract actually was.

We have no occasion, in the circumstances, to pass upon the question of whether the defendant would, or would not, be liable on its contract, or for its torts, if it was engaged in a general sale of its current outside its limits, or whether in those circumstances it would be estopped from invoking the doctrine of *ultra vires*. Such is not the case before us.

 Since neither the by-laws pleaded by the defendant, nor, in the circumstances, its alleged lack of authority, is a defense to the action, the demurrer was properly overruled, since a demurrer opens the whole record so that judgment must be against the first party whose pleadings are defective in substance. *Coates* v. *Eastern States Farmers' Exchange, supra; Spaulding* v. *Mutual Life Ins. Co.,* 94 Vt. 445, 111 Atl. 522, and cases cited.

The demurrer challenges certain allegations in the replication on the ground that they are allegations of law and not of fact, and certain others on the ground that they constitute a departure from the declaration, but since these questions are inadequately briefed or not briefed at all, they are not considered.

*Judgment affirmed with costs to plaintiff in this court, and cause remanded.*