### Aime Valcour *v.* Village of Morrisville.

February Term, 1936.

Present: Slack, Moulton, Thompson, and Sherburne, JJ.

Opinion filed May 5, 1936.

244

*Frederick G. Fleetwood* and *Guy M. Page* for the petitionee.

*Benjamin N. Hulburd* for the petitioner.

SHERBURNE, J.    Aime Valcour brought his petition to the public service commission asking to have the village of Morrisville ordered to supply him with electricity.    From an order directing the village to supply electric energy to him from its unsold surplus, upon the terms and conditions set forth in its contract of service whereby it sells electric energy to consumers residing in his vicinity, the village has appealed.

Petitionee is a municipal corporation operating an electric utility within the corporation limits and distributing and selling considerable electricity outside these limits.    It generates its electric energy within the State by means of water power, and, in the location, construction, and maintenance of its generating plant, and in acquiring flowing and ponding rights and rights of way, and in the establishment and maintenance of its lines for transmission of electric energy, has, by the provisions of its charter, power to take property by the exercise of the right of eminent domain.    See section 9 of No. 185 of the Acts of 1894, and sections 16 and 17 of No. 313 of the Acts of 1910.    It runs its electric lines in the public highways at some points outside its limits, but the two lines next mentioned are not in the highway except that the wires cross the highway in one or two places.    It has a high tension line outside its limits passing not far from petitioner's farm and conveying current to the electrical department of the village of Stowe.    Petitioner's farm is located in the town of Stowe upon a road running approximately north and south and intersecting the main highway from Morrisville to Stowe at an acute angle.    Current from the high tension line is transformed and furnished to several farms upon petitioner's road, among which are the Stowe town farm .5 of a mile southerly of petitioner's farm and the Davis building .4 of a mile northerly.    Petitioner has been a customer of petitionee, but since certain litigation between the parties relative to the destruction of petitioner's barn by fire attributable to petitionee's negligence, has been without electricity.

The former litigation came before us upon a demurrer and we then held, *Valcour* v. *Village of Morrisville,* 104 Vt. 119, 132, 158 Atl. 83, that the village had the right to dispose of its surplus current outside its own limits and to extend its equipment as might be necessary for that purpose; that in such operations it was not acting as a public utility, but its relations with its customers were purely contractual; that it had no authority as a public utility to operate outside its limits; that it had no special legislative authority so to act; and that it had no authority to operate outside its limits except by contract.

This petition, however, is based upon P. L. 6453, which reads as follows:

"A person, association, company or corporation, its successors, grantees, lessees, trustees or receivers by whatever court appointed, that generates electric energy within the state by means of water power, and which, in the location, construction or maintenance of its generating plant, including the acquiring of water rights, flowing or ponding rights, within the state or rights of way, or in the establishment or maintenance of its lines for transmission of electric energy, confiscates by the exercise of the right of eminent domain, either under the general law, or if a corporation under the provisions of its charter or general law, or has by the provisions of its charter or general law power so to do, the property of any person or any right, title, interest, easement or estate therein, or uses a public highway for carrying its transmission lines over or along the same or beneath the surface thereof, at all reasonable times when requested so to do, shall sell and furnish at a reasonable price so much or such an amount of such electric energy as the public convenience or necessity may require to any and all persons, companies and corporations, municipal or private, in this state, desiring to use the same in the state for heating, lighting or power purposes or for any other public use or purpose; subject to such rea-

sonable conditions and limitations in each case as the public service commission, upon petition brought and after due notice to both parties, may prescribe.''

The provisions of this statute, which has been in force since the enactment of No. 166 of the Acts of 1912, were not before us when the former case between these parties was considered, nor were they involved in the then controversy. We are not concerned here with that part of the statute which relates to acquiring property and rights by eminent domain. Petitionee's charter gives it this power for the sole purpose of establishing and operating an electric utility within its territorial limits. *Valcour* v. *Village of Morrisville, supra.* We are concerned, however, with that part of the statute which relates to generating electric energy by means of water power and the use of the highways outside its limits for the carrying of transmission lines for the disposal of such electric energy.

It clearly appears from the statute that the Legislature recognized the value of the water powers within the State from which our private industries derive a large amount of the total power used and from which our electric utilities derive substantially all their power; and that it intended to impress a dedication to a reasonable public service upon those generating electricity by water power and availing themselves of the power to take property and rights by eminent domain, or of the use of the public highways for their transmission lines, and to restrict the power of eminent domain and such use of the highways to those willing to assume a public service.

In *Rutland Railway Light & Power Co.* v. *Clarendon Power Co.,* 86 Vt. 45, 55, 83 Atl. 332, 336, 44 L. R. A. (N. S.) 1204, decided shortly before the enactment of this statute, this Court, in holding that the generation and distribution of electric energy for general sale for power purposes was as much a public purpose as the sale of current for lighting purposes, said: ''Wherever access can be had to a transmission line, farmers are running their separators, churns, ensilage cutters, and in some cases milking machines, by this power. In the kitchen the electric range, washing machine and flatiron are in daily use; in the sick room the electric pad, the electric stove, and the ozonator

248

have become almost indispensable; the housewife runs her sewing machine, sweeps, dusts and cleans house by electric power. And the usefulness of this agency is constantly spreading, and the time is fast approaching when electricity will come to be * * * 'the life-blood of the country's industries.' It is especially important in this State, where in spite of our disadvantages in the matter of transportation, the available water powers make possible a wide distribution of current for domestic and industrial purposes.'' What was then said has become more and more true, and in recent years there have been increasing effort and agitation to extend electric facilities into more or less remote rural communities with the hope that ultimately every farmer may enjoy this convenience. The statute attempts to further this end by enabling anyone within reasonable proximity to such a transmission line to avail himself of electric service.

We are not called upon to determine if the maintenance of an electric transmission line in the highway constitutes an additional burden of which an abutting owner can complain. We are here only concerned with the rights of the public in the highway. Subject to constitutional limitations, the State has absolute control of its public streets and highways, including those of its municipal and *quasi* municipal corporations. 13 R. C. L. 163. The right to grant the privilege of occupying the highways and fix terms and conditions is primarily in the Legislature. *Burlington Light & Power Co.* v. *City of Burlington*, 93 Vt. 27, 33, 106 Atl. 513; *City of Burlington* v. *Burlington Traction Co.*, 98 Vt. 24, 37, 124 Atl. 857. The right, common to all, to use the highways, is the ordinary use made thereof, and by no means includes the special and extraordinary use of an electric transmission line for a private use, in which capacity the petitionee claims to be acting. This is recognized by P. L. 6433 and 6434. Under P. L. 6433 the highway board or the selectmen may authorize persons to construct electric lines for private use along the highways of a town. P. L. 6434 provides: ''After the erection of such line, the posts and structures thereof within the highways shall be subject to the regulation and control of the highway board or selectmen, who may at any time require alterations in the location or erection of such poles and structures and may order the removal thereof, having first given the parties notice and an opportunity to be

heard.'' Except for the insertion of the words ''highway board'' in these sections when the Public Laws were enacted, the provisions are identical with those first promulgated in the Vermont Statutes of 1894, secs. 4242 and 4243, so far as private electric lines are concerned. Under the rule for statutory construction given in *In re James*, 99 Vt. 265, 272, 132 Atl. 40, P. L. 6453 clearly constitutes a qualification of P. L. 6433.

We do not think that the mere fact that the high tension line, or the branch line serving petitioner's neighbors, crosses the highway in one or two places is sufficient to bring the petitionee within the meaning of P. L. 6453. As to the other wires maintained in the highway it is sufficient for present purposes to point out that it does not appear when they were erected, and so we cannot assume that it was subsequent to the enactment of the statute. We need not decide what the effect would be if erected subsequently, but, if erected before under authority from the selectmen, the result of treating the statute as applicable to the situation would be to unlawfully compel the petitionee to do a form of public service, unless it had already voluntarily dedicated itself to the public service in that territory. *Producers Transportation Co.* v. *Railroad Com.*, 251 U. S. 228, 64 L. ed. 239, 40 Sup. Ct. 131, 132. In that case a statute, which took effect August 10, 1913, provided that every private corporation or individual operating any pipe line for the transportation of crude oil, directly or indirectly, to or for the public for hire, which is constructed or maintained upon, along, over, or under any public highway, and in favor of whom the right of eminent domain exists, shall be deemed a public carrier and subject to regulation by the railroad commission. The company's pipe line was put into operation in 1910. The Court said: ''It is, of course, true, that if the pipe line was constructed solely to carry oil for particular producers under strictly private contracts, and never was devoted by its owner to public use, that is, to carrying for the public, the state could not, by mere legislative fiat or by any regulating order of a commission, convert it into a public utility or make its owner a common carrier; for that would be taking private property for public use without just compensation which no state can do consistently with the due process clause of the 14th Amendment.'' The case turned, however, upon a finding that the pipe

line, in fact, had been voluntarily devoted to public use. The result is that the order here cannot be sustained under the statute.

■ Nor can the order be justified under the provisions of chapter 250 of the Public Laws, entitled "Powers and Duties as to other Public Service Companies," specifically secs. 6084, 6085, 6091, and 6094, upon which the public service commission in its report based its jurisdiction.

By sec. 6084, the word "company" or "companies" as used in the chapter means and includes "municipalities." By sec. 6085, the commission is given "general supervision of all companies engaged in the manufacture, distribution, or sale of * * * electricity, directly to the public or to be ultimately used by the public for lighting, heating or power." By sec. 6091, "The commission shall have jurisdiction, on due notice, to hear, determine, render judgment, and make orders and decrees in all matters provided for in the charter or articles of association of any corporation owning or operating any plant, line or property subject to supervision under this chapter, and shall have like jurisdiction in all matters respecting * * * III. The manner of operating and conducting any business subject to supervision under this chapter, so as to be reasonable and expedient, and to promote the safety, convenience and accommodation of the public; * * * VI. To restrain any company subject to supervision under the chapter from violations of law, unjust discrimination, usurpation or extortion." And by sec. 6094, "Each company subject to supervision under this chapter shall be required to furnish reasonably adequate service, accommodation and facilities to the public."

Although the commission found that the petitionee, by disposing of its surplus in the neighborhood in which petitioner resides, was precluding another utility from supplying electric energy therein, there was no finding as to the amount of electric energy generated by petitionee's plant or as to the relative extent to which it was doing business outside its limits, or that it was in fact devoting its surplus to public use; but the commission assumed from our former holding that the petitionee in the sale of its surplus outside its limits was not acting as a public utility, but its relations with its customers were purely contractual.

■ Upon this showing the status of the petitionee is that of a purveyor of electric energy by special contract, and its transmission lines and equipment used for that purpose are not dedicated to public use. If it has not professed to sell to the public indiscriminately at regular rates, which is the fundamental characteristic of a public calling, but has adopted the policy of entering into special contracts on its own terms, it is engaged in private business. Wyman, Public Service Corporation, secs. 227, 243. Its contracts are of interest or concern only to the immediate parties, and are purely voluntary; and there is no right to compel the sale of its surplus. *State ex rel. Danciger & Co.* v. *Public Service Com.*, 275 Mo. 483, 205 S. W. 36, 18 A. L. R. 754; *State ex rel. Public Service Com.* v. *Spokane & I. E. R. Co.*, 89 Wash. 599, 154 Pac. 1110, L. R. A. 1918C, 675.

■ Consequently the effect of the order under the theory upon which the commission took jurisdiction is to attempt to convert a private contractor into a public utility; whereas, as we have already seen, it is beyond the power of the State, whether by legislative fiat, or by the regulating order of a commission, to convert property used exclusively in private business into a public utility, or to impose upon the owner the obligation of indiscriminate service "for that would be taking private property for public use without just compensation, which no state can do consistently with the due process clause of the 14th Amendment." *Producer's Transportation Co.* v. *Railroad Com., supra; Michigan Public Utilities Com.* v. *Duke,* 266 U. S. 570, 577, 578, 69 L. ed. 445, 450, 45 Sup. Ct. 191, 36 A. L. R. 1105; *Frost & Frost Trucking Co.* v *Railroad Com.,* 271 U. S. 583, 70 L. ed. 1101, 46 Sup. Ct. 605, 47 A. L. R. 457; *Smith* v. *Cahoon,* 283 U. S. 553, 75 L. ed. 1264, 51 Sup. Ct. 582; *State ex rel. Public Utilities Com.* v. *Nelson,* 65 Utah, 457, 238 Pac. 237, 42 A. L. R. 849.

■ The petitionee contends that our former decision is *res adjudicata* between the parties as to its lack of power to do a public utility business outside its territorial limits. The petitioner says that this is not available as a defense because not pleaded. It is not necessary here to determine either matter as the commission found the facts as to the prior litigation and that finding has not been challenged by any exception to the

report. *People's Trust Co. of St. Albans* v. *Finn,* 106 Vt. 345, 354, 175 Atl. 4, and cases cited. We suggest, however, that it is possible that a case may be presented in which we should determine whether the surplus from a municipal utility may or may not be devoted to public use outside the territorial limits of the municipality without express legislative authority.

*Order reversed, and cause remanded. Let the result be certified to the public service commission.*