JOSIAH B. MAYO, and others, In Equity,

vs.

DOVER & FOXCROFT VILLAGE FIRE COMPANY, and others.

Piscataquis.　　Opinion September 9, 1902.

*Ultra Vires Contract.　Village Corporation.　Water-Works.　Subsequent Legislative Ratification.　Taxation.　Spec. Laws, 1863, c. 262; 1887, c. 31; 1887, c. 260; Maine Const., Art. IX, § 8.*

The legislature may grant to any public corporation, whether its municipal powers and purposes be general or limited, power to construct, or to purchase, and maintain a system of water-works for the purpose of furnishing water for its municipal purposes and for use by its inhabitants for domestic and sanitary purposes.

On November 27, 1886, the Dover and Foxcroft Village Fire Company, a public corporation created by an act of the legislature approved March 20, 1863, (chap. 262, special laws 1863) with certain powers and for certain limited municipal purposes, entered into a written contract with the Dover and Foxcroft Water Company for a hydrant service for protection against fire. The contract also contained a provision giving the village corporation the right at its option to purchase, within the limited time stated in the contract, all of the property and all of the corporate rights and privileges of the Water Company at a price to be agreed upon by the parties, or, in case of the failure of the parties to agree, at a price to be determined by three disinterested appraisers to be appointed by the chief justice of the supreme judicial court.

The legislature of 1887 passed an act (chap. 260, special laws of 1887) entitled: "An Act to amend the charter of the Dover and Foxcroft Village Fire Company," by the first section of which, all of the proceedings of the village corporation at the meetings when the latter considered and finally voted to make this contract, were "ratified, confirmed and made valid." By the second section, the village corporation was authorized "to raise money for an annual supply of water for fire and other municipal purposes, and for an annual rental of hydrants, in addition to the purposes now authorized, to be levied and assessed in the manner provided by its charter and by this act." By the third section the contract above referred to between the village corporation and the Water Company under date of November 27, 1886, was "ratified, confirmed and made valid", and the village corporation was "authorized to raise such sums of money from time to time as may be necessary for the purposes thereof."

In a bill in equity against the village corporation brought by certain of its taxpayers, asking for an injunction to restrain it from proceeding further under this contract to purchase the property of the Water Company, and to have the price thereof determined as provided by the contract, *held;* that although the contract when made was ultra vires, it became valid by reason of the subsequent legislative authority and the acquiescence in the contract after such authority; that it was the plain intention of the legislature, in the passage of this act, to give plenary authority, by way of ratification, to the village corporation to make this contract, including the important provision relating to the purchase of the water company's property, and that it must be assumed that the legislature, when it passed this act, the main purpose of which was to ratify this contract, had knowledge of what the contract was and of this particular clause in question.

Subsequent ratification by the legislature, under such circumstances as are here involved, is equivalent to previous authority. It is a permission to the municipal corporation to enter into the contract if they do not choose to reconsider their former action, and none the less valid because it is known to the legislature what the proposed contract was.

Municipal corporations can, not only exercise such powers as are granted by their charters, or by general law, either expressly or by implication, but also such as are incidental to the powers expressly granted and such as are essential to the objects and purposes of the corporation.

Where a water-works system is purchased in good faith by a municipal corporation for the main and primary purpose of supplying water for its own municipal wants, and for domestic use by its inhabitants, under legislative authority, such legislation and, the action of the municipal corporation under it in making the purchase, and in raising money by taxation therefor, are not in violation of that clause of the state constitution which requires equal taxation, because of the fact that incidentally the purchasing municipality may be compelled to assume the obligation of the original water company to provide water for some individual takers who reside outside of its territorial limits.

If the village corporation, as purchaser of this property of the Water Company, should be obliged to furnish water for a few takers who reside outside the limits of the corporation, it must be assumed that it will receive a reasonable compensation therefor, so that the taxation of property within the village corporation will not be increased in the slightest degree by such purchase. But, in any event, this is merely incidental and subsidiary to the main and primary object of furnishing water for its lawful public purposes under legislative authority.

*Held;* that the acts of the legislature of 1887, were sufficient to ratify and make valid the contract between the village corporation and the water company; that the act amending the charter of the Dover and Foxcroft Village Fire Company gave to that corporation, by express grant or by necessary implication, the authority to carry out that contract by a pur-

chase of the water-works system, and, subsequent to such purchase, to maintain and operate the same; and that this legislation was not in violation of the provisions of our state constitution.

On report.   Bill dismissed.

Bill in equity by twelve tax-payers of the Dover and Foxcroft Village Fire Company to enjoin the purchase by it of the water-works of the Dover and Foxcroft Water Company, and to restrain the creation of any debt or assessment of any tax by the village corporation on account of the purchase price.

The cause was heard upon bill, answer and replication, and after the evidence was taken out was reported to the law court.

The facts are stated in the opinion.

*O. D. Baker; J. B. Peaks,* for plaintiffs.

The grounds relied on for injunction are two:

1.   That the purchase proposed would be ultra vires as to the Fire Company.   That if the purchase were effected, the charter powers of the Fire Company would not permit it to legally exercise the rights, or be compelled to perform the duties, of the Water Company purchased.

2.   That even if the charter of the Fire Company were adequate, the Fire Company could not, under the constitution, acquire or exercise the full franchises of the Water Company, since it would involve the raising of money by direct taxation upon property within the taxing district, to pay for public benefits shared in common by persons and property outside that district, while the outside property thus benefited was itself exempt from taxation.

1.   The general powers conferred on the Fire Company, either by its original charter or by the amendment of 1887, are not broad enough to permit it legally to perform the duties or to enjoy the privileges imposed and conferred on the Dover and Foxcroft Water Company under its charter of 1887, and any attempt by the Fire Company so to do would be ultra vires; and all steps, by contract, reserved option or otherwise, taken towards that end, would be equally ultra vires and therefore legally enjoinable at request of tax-payers in said fire district.

A municipal corporation has no general power to incur expense for water-works unless such power is conferred by statute in express terms, or by necessary intendment. See Vol. 20 Am. & Eng. Ency. of Law, 1st Ed., title Water-Works, pp. 1, 2. Vol. 15 Am. & Eng. Ency. of Law, 1st Ed., title Municipal Corporations, pp. 1115, 1117, and cases cited.

Legislative sanction to sale or lease of franchises is not to be implied, but must be clearly expressed in the charter or act. *Stewart* v. *Lehigh Valley R. R. Co.*, 38 N. J. Law, 505, 513; *Stockton* v. *Central R. R. Co. of N. J.*, 50 N. J. Equity, 52, 24 Atlantic Rep. 969.

As an illustration of how strictly the charter power of a municipal corporation as to distributing water is construed, see *Quincy* v. *Boston*, 148 Mass. 389, where it is held that an act authorizing a city to distribute water "throughout said city" does not embrace the right to carry water to Long Island in Boston harbor, although the Island at the passage of the act was a part of the city, the decision being based on the general ground that where the legislature intended to grant a power to cross the harbor it was likely to do so in express and unequivocal terms, and in the absence of such terms such could not be implied.

As an illustration of the extent to which courts are bound to go to prevent the execution of contracts which are ultra vires, see *Ziegler* v. *Chapin*, 126 N. Y. 342, in which case it was held that where goods are bought by a corporation with intent to use them for a purpose ultra vires, and such unlawful use is stipulated for in the agreement to purchase, the contract is so far void that the vendor cannot recover for goods thus bought. See also Vol. 27, Am. & Eng. Ency. of Law, 1st Ed., title Ultra Vires, p. 389, and cases cited. See *Franklin* v. *Lewiston Savings Institution*, 68 Maine, 43.

Counsel discussed the powers and charters of the two corporations and the provisions of the contract.

2. The deeper and equally fatal objection to the exercise by the Fire Company of the option reserved in the contract is, that for the legislature to authorize the acquisition of the property by the Fire Company is beyond the constitutional power.

If the purchase is made at all, whether by agreement or appraisal, payment must be made in such way only as the charter permits, viz., by direct property tax levied and collected in the same way as town taxes; that is, by direct assessment upon property within the fire district.

Such a tax would be illegal, because it would be laid on a limited territory to pay for public benefits common to a larger territory, from which the property so benefited lying outside the territory taxed would be exempt.

Such taxation would be in violation of the provisions of the Constitution of Maine, Art. IX, § 8, because unequal.

The territory embraced within the charter of the Water Company and actually operated in by it is not confined to the limits of the fire district, but embraces the entire territory of the two towns of Dover and Foxcroft, of which the fire district forms but a part.

Each inhabitant of the fire district is a tax-payer, and each one must be taxed, not in proportion to the benefits received as a private taker of water, but in proportion to his general property within the fire district.  The money for this huge cash payment cannot be raised as the charters alone permit, either "annually," or "from time to time," but must be assessed in a single year, and paid in one lump sum; so that the tax must be levied on the entire taxable property in the fire district in a single year, amounting to one-twelfth of all the property which every inhabitant in the district owns.

Counsel cited:  Cooley on Const. Lim., 4th Ed., *494, *495; *Hammett* v. *Philadelphia,* 65 Pa. St. 146; *McCormick* v. *Patchin,* 53 Mo. 33; *Dyar* v. *Farmington Village Corporation,* 70 Maine, 515.

Furthermore, if it should be said that an option reserved under a contract may be exercised either before or after appraisal, and that it does not follow, if an appraisal is had, that the company will elect to purchase, the answer is, if it does elect to purchase, it cannot legally pay the purchase price or tax the petitioners for that purpose, and hence even the preliminary steps in furtherance of that unlawful end must be enjoined.

If it does not finally elect to purchase, the incurring of the large expense necessary to the procurement and completion of a futile

appraisal would still be unlawful, and for the reasons above given must equally be enjoined under the constitution and at common law.

H. M. *Heath;* F. E. *Guernsey;* C. W. *Hayes,* for defendants.

SITTING: WISWELL, C. J., WHITEHOUSE, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

WISWELL, C. J. The Dover and Foxcroft Village Fire Company is a public corporation consisting of portions of the territory of the adjoining towns of Dover and Foxcroft, and the inhabitants thereon, created by an act of the legislature approved March 20, 1863, (chap. 262, special laws 1863) with certain powers and for certain limited municipal purposes, which are stated as follows in the original act of incorporation: "Said corporation is hereby invested with power at any legal meeting called for the purpose, to raise money for the purchase, repair and preservation of one or more fire-engines, hose and apparatus for extinguishment of fire, for the procuring of water, and for the organizing and maintaining within the limits of said territory an efficient fire department."

The act of incorporation contained provisions in relation to the officers of the corporation; the manner in which money raised by the corporation for its authorized purposes should be assessed upon the property within the territory; authorizing the corporation to borrow not exceeding the sum of two thousand dollars for its purposes, and in relation to a variety of other matters not necessary to be here considered.

On November 27, 1886, a written contract was entered into between this corporation and the Dover and Foxcroft Water Company, wherein the water company agreed to furnish, set and maintain a certain number of hydrants, and additional hydrants as they might be required, and to furnish through such hydrants a constant and sufficient supply of water for protection against fire, for which the village corporation agreed to pay an annual rental. The contract contained numerous and detailed provisions as to the location, size and character of the dam, standpipe, pumps and pipe lines, and in general as to the construction and efficiency of the system of water-works to be built by the water company.

The contract also contained this clause: "Item Eighteenth. At any time after ten years, and before fifteen years, from the time payments begin under this contract the said Fire Company shall have the right and privilege of purchasing of said water company all the buildings, reservoirs, fixtures, apparatus and property of said water company, with all its corporate rights and privileges at such a price as may be agreed on; and in case of disagreement between the parties the price shall be determined by three disinterested appraisers appointed by the chief justice of the supreme judicial court, none of whom shall be residents of Piscataquis county. When thus chosen and assembled such appraisers shall have power to determine finally and conclusively the amount which said Fire Company shall pay for the rights, property and franchise of said water company. The option of said purchase may be exercised by the said Fire Company either before or after such appraisal, if after, then within six months therefrom."

This contract was executed upon the part of the village corporation by its assessors who were authorized to do so by a vote of the inhabitants at a meeting duly called for the purpose and held at Mayo's Hall in the town of Dover on November 18, and by adjournment, on November 27, 1886. At the first meeting a committee was appointed "to negotiate a contract for a fire service of thirty hydrants, at an annual rental, with some party, and report the same at an adjourned meeting." At the adjourned meeting the committee in their report submitted a draft of this contract with the water company, which was first discussed item by item, spread upon the records of the village corporation; and it was then voted "that the assessors of the Dover and Foxcroft Village Fire Company be hereby instructed and authorized in the name of the said Fire Company and in its behalf, to execute the contract this day reported by the committee on water-works, and this day spread upon the records, whenever the same shall be executed on its part by the Dover and Foxcroft Water Company."

The Dover and Foxcroft Water Company, the other party to this contract, had shortly before its execution been organized under the general laws of this state relating to the organization of corporations.

But in the following winter an act of the legislature (chap. 31, special laws 1887) was passed giving it certain powers. A portion of § 12 of this act is as follows:

"The existing contract between the said Water Company and the said Dover and Foxcroft Village Fire Company of date of November twenty-seven, in the year of our Lord one thousand eight hundred and eighty-six, is hereby confirmed and made legal and valid."

And the same legislature passed an act (chap. 260, special laws of 1887) entitled "An Act to amend the charter of the Dover and Foxcroft Village Fire Company, the first three sections of which are as follows:

"Sect. 1. The proceeding of the incorporation and organization of the Dover and Foxcroft Village Fire Company are hereby confirmed and made valid; and all the proceedings of said corporation in calling, holding and acting in a meeting of said corporation, held in Mayo's Hall in Dover, on the eighteenth day of November, in the year of our Lord one thousand eight hundred and eighty-six, and by adjournment thereof on the twenty-seventh day of November, in the year of our Lord one thousand eight hundred and eighty-six, and all the votes, acts and doings of said corporation at said meetings, are hereby ratified, confirmed and made valid.

"Sect. 2. Said corporation is authorized to raise money for an annual supply of water for fire and other municipal purposes, and for an annual rental of hydrants, in addition to the purposes now authorized, to be levied and assessed in the manner provided by its charter and by this act.

"Sect. 3. The existing contract of date of November twenty-seven, in the year of our Lord one thousand eight hundred and eighty-six, between said corporation and the Dover and Foxcroft Water Company, is hereby ratified, confirmed and made valid; and said fire company is authorized to raise such sums of money from time to time, as may be necessary for the purposes thereof."

On July 3, 1891, the Maine Water Company, by a deed of that date from the Dover and Foxcroft Water Company acquired "all the rights, privileges, immunities, franchises and property" of the Dover and Foxcroft Water Company, subject to all the then existing con-

tracts of this latter company, special reference being made to the contract under consideration in these words: "The said Maine Water Company hereby covenants and agrees that it will faithfully perform each and all of the obligations of all the contracts now existing between the Dover and Foxcroft Water Company and the Dover and Foxcroft Village Fire Company in each and every particular, and shall be subject to all the liabilities of said contracts, as fully and completely as if said Maine Water Company was a party to said contract."

On September 7, 1901, the Dover and Foxcroft Village Fire Company appointed a committee to proceed under item eighteenth, hereinbefore quoted, of this contract, with full power and authority to secure by agreement if possible, if not, by appraisal the valuation and amount of money necessary to purchase the water system, rights, property, privileges and franchise located in the towns of Dover and Foxcroft now owned by the Maine Water Company, in accordance with the provisions of the contract above referred to. And prior to the commencement of this bill, this committee in behalf of the village corporation had petitioned the chief justice of this court, setting out the contract in question, the fact of the appointment of the committee for the purpose above named and their authority, alleging that there was a disagreement between the village corporation and the Maine Water Company as to the price to be paid for the property, rights and privileges of the water company, and praying for the appointment of three disinterested appraisers to determine such price in accordance with the provisions of the contract.

Upon this petition notice was ordered returnable on Feb. 11, 1902. But, before that time, this bill in equity by certain tax-payers within the limits of the territory of the Village Fire Company, against that corporation and its committee, was filed praying for a preliminary and permanent injunction restraining the village corporation ·and its committee from taking further action in the matter, and an order was made upon the prayer contained in the bill for a preliminary injunction returnable at the same time and place as was the order upon the petition for the appointment of appraisers. No decree was made upon the prayer for a preliminary injunction, but the hearing

upon the petition for the appointment of appraisers was continued until the cause could be finally heard and a final decree made. The case has been reported to the law court for that purpose.

It is urged, in behalf of the complainants, that their prayer for a perpetual injunction should be granted because they contend that the contract between the Village Fire Company and the predecessor of the Maine Water Company was ultra vires; that the acts of the legislature above referred to and relied upon by the respondent as ratifying this contract, were insufficient for that purpose, at least so far as the provision relating to the purchase of the property is concerned; that it was not the intention of the legislature to ratify that clause and to give the village corporation the power to purchase the property of the water company; that even if such intention could be gathered from the language of the legislation and if the act was sufficient in terms, it was in violation of that provision of the state constitution which requires equal taxation.

Whatever may have been the extent of the powers granted to the village corporation in its original charter, to raise money for the purchase and maintenance of apparatus for the extinguishment of fire, in organizing and maintaining an efficient fire department, and "for the procuring of water," there can be no question as to the proposition that prior to the legislation of 1887, this corporation had no power to enter into a contract for the purchase of a system of water-works such as the water company contemplated building, intended to supply water, not only for protection against fire, but also for other municipal purposes and for domestic uses. The municipal purposes for which this corporation was created were limited to those named in the section already quoted. Such a public corporation certainly has no power, until invested with it by legislative action, to acquire by purchase or to construct a general water-works system built and designed to supply water for all municipal and domestic uses. This contract, therefore, when originally entered into was undoubtedly ultra vires.

But, it is equally beyond all question that the legislature may grant to any municipal corporation, whether its municipal powers and purposes be general or limited, the power to construct or to pur-

chase and to own and maintain a system of water-works either for the exclusive purpose of furnishing water for municipal purposes, or for that and in addition to furnish water for the use by its inhabitants for domestic and sanitary purposes. The instances of such grants of power by the legislature which have been upheld by the courts, or which have never been questioned, are too numerous to require the citation of authorities.

So that upon this branch of the case, the only question is as to the effect and meaning of the legislative acts of 1887, already quoted. It seems to us that the language of the sections before quoted of chap. 260, special laws of 1887, does not admit of any doubt that it was the plain intention of the legislature, in the enactment of this chapter, to give plenary authority, by way of ratification, to the village corporation to make this contract, including the important clause relating to the purchase of the property. We must assume that the legislature, when it passed this act, the main purpose of which was to ratify this contract, had knowledge of what the contract was and of this particular clause in question.

In the first section reference is made to the meeting of the inhabitants of the corporation in Mayo's Hall on November 18, 1886, and to the adjourned meeting on November 27. All of the proceedings, doings and acts of this meeting and of the adjourned meeting, were ratified, confirmed and made valid. These were the meetings, as we have already seen, when the proposition of the water company in the form of a draft of the contract, was discussed and accepted and the draft spread upon the records of the corporation.

By the second section, the corporation is authorized to raise money for an annual supply of water for fire and other municipal purposes, and for an annual rental of hydrants, in addition to the purposes previously authorized. By the third section this contract, definitely referred to, is ratified, confirmed and made valid; "and said fire company is authorized to raise such sums of money from time to time, as may be necessary for the purposes thereof." What purposes? Certainly not for an annual supply of water for protection against fire and other municipal purposes, nor for an annual rental of hydrants, because authority is granted to raise money for these pur-

poses in the section immediately preceding. The contract referred to in this section does not call for the payment of money for any other purpose, except for the purchase of the property. If this language was intended to have any meaning, and we certainly cannot assume that it was used without any purpose, it must have been intended, we think, to cover this very clause relative to the purchase of the property, and to authorize the village corporation to raise money for the purpose of paying for the property in case it exercised its option to purchase.

It is impossible for us to believe, from the language used, that the legislature intended to authorize and ratify all of the rest of this contract, and not to ratify the clause relative to the purchase of the property which must have been inserted entirely for the benefit of the village corporation, since, while it gave the latter the option to purchase, it placed no obligation upon it to purchase.

Counsel suggest various respects in which it is claimed the legislation referred to was inadequate to give the village corporation the necessary powers to purchase and subsequently maintain this waterworks system, and therefore argue that it was not the intention of the legislature to confirm and ratify that particular portion of the contract, or to grant such power. For instance, it is said that the charter of the water company gave it the right to have a capital stock of one hundred thousand dollars, which as a matter of fact was fully issued by that company, and that no corresponding right was given to the village corporation in its amended charter. But while a capital stock is necessary for a private business corporation and represents the amount paid in or promised to be paid in by the members of the corporation, with which to do business, it is entirely unnecessary and would be most inappropriate for a municipal corporation to enable it to construct or to purchase property for public purposes. A municipal corporation no more needs a capital stock in order to own a system of water-works than does a quasi municipal corporation such as a county, to enable it to build a court-house.

It is said that the enabling act of the water company authorized it to hold real and personal property to the amount of one hundred thousand dollars, and that no such power was given to the village

corporation. But legislative authority given to a municipal corporation to acquire by purchase property to the extent in value of one hundred thousand dollars for a public purpose, must carry with it by necessary implication the power to hold that amount of property after it has once been acquired. And generally, as applicable to many of these suggestions, it must be remembered that municipal corporations can not only exercise such powers as are granted by their charters, or by general law, either expressly or by implication, but also such as are incidental to the powers expressly granted and such as are essential to the objects and purposes of the corporation.

Again, it is said that this village corporation can only raise money by taxation, except the comparatively small sum of two thousand dollars, which, by its original charter, it was authorized to borrow; and that in order to pay for this property it would be necessary to raise by taxation, at one time a very large amount, said to equal eight per centum of the whole taxable property within its territory. While this may be perhaps a serious practical difficulty in carrying out the contemplated purchase of the property, we cannot see that it affects the legal question involved.

It is said that the water company's charter made it liable to the two towns for all sums recovered against either of them on account of any defect in the highways caused by the company's negligence, but that the act of 1887, amending the charter of the village corporation contains no reference to any liability upon the part of it in the case of such purchase; and we are asked if the village corporation would be subjected to such a liability in case of the purchase of the property. The question does not arise in this case. We do not think that any argument can be drawn from the fact that the act is silent upon the subject. The question might well be left to be determined upon the general principles deducible from the nature of the municipal ownership of such property.

It seems that the Dover and Foxcroft Water Company during its ownership of the property, mortgaged it to secure bonds of which $60,000 in amount are now outstanding, and we are asked by counsel if the village corporation, in case the purchase of the property is effected, can or must assume these bonds, and if not, if the rights of

these bondholders will not be impaired by such purchase. We think it is a sufficient answer to this suggestion to call attention to the fact that this contract providing for the purchase was executed prior to the time that the mortgage was made, and was ratified by the very act of the legislature, chap. 31, special laws 1887, which authorized the water company to issue bonds and secure them by a mortgage upon its property and franchise, so that the holders of these first mortgage bonds took them subject to the then existing contract.

No point is made because the legislative authority in this case was given after the execution of this contract by way of a ratification of that contract. The sufficiency of such legislation in this state under circumstances similar to those involved in this case, has been frequently upheld. The following quotation from the opinion of the court in *Shurtleff* v. *Wiscasset*, 74 Maine, 130, is particularly applicable to the facts of this case:

"The legislative act is after all only a grant of authority, nunc pro tunc, a permission to the town to enter into the contract if they do not choose to reconsider their former action, and none the less valid because it was known to the legislature what the contract proposed was." The village corporation never reconsidered its action in making this contract, but, upon the contrary, both parties to it, and the successor of the water company, have always treated it as a valid and existing contract until this question arose.

It is further argued in behalf of the complainants, that, even if this act of the legislature of 1887 was broad enough to give the village corporation the power to acquire by purchase this property of the Maine Water Company under the contract with the latter's predecessor, this legislation is in violation of article IX, § 8 of our constitution, as follows: "All taxes upon real and personal estate, assessed by authority of the state, shall be apportioned and assessed equally according to the just value thereof."

As we have already seen, a portion of each of the towns of Dover and Foxcroft is not included within the limits of the territory of the village corporation. By the Dover and Foxcroft Water Company's enabling act, that corporation was "empowered to supply the towns of Dover and Foxcroft, and inhabitants thereof, with pure

water for domestic, sanitary and municipal purposes." At the time that these proceedings were instituted to have the value of the water company's property determined for the purpose of purchase, the water company was actually supplying water for domestic use to six takers, inhabitants of one or the other of these towns, who lived outside of the limits of the territory of the village corporation.

It is argued that, if the village corporation can purchase this property at all, it must do so subject to the same obligation as to furnishing water to takers outside of the village corporation as the water company is under now. In other words, that the village corporation, if it acquires by purchase all of the property of the water company, and all of its corporate rights and privileges, must do so subject to its public obligation to furnish water to all inhabitants of the two towns, without as well as within the limits of the territory of the village corporation; that consequently, in case of the purchase of this property by the corporation, the inhabitants thereof would necessarily be subject to taxation to pay for benefits common to those living both within and without the limits of the corporation, while those living in either of the two towns but outside of the territory of the corporation would not be liable to such taxation. So, it is argued, that a portion of the property of the town, that within the territory of the village corporation, will be subject to taxation, and the remainder exempt from such taxation, while the purpose of the tax is to obtain a benefit common both to the property taxed and that exempted.

In support of this contention counsel rely upon the case of *Dyar* v. *Farmington Village Corporation,* 70 Maine, 515. In that case the village corporation, embracing a portion of the territory of the town of Farmington, and created to provide the means of protection against fire, and for maintaining a local police, was authorized by an act of the legislature, upon a two-thirds vote of the legal voters of the corporation, to raise by tax or loan a sum of money, not exceeding a certain amount, and to appropriate the same in such manner as might be determined to aid in the extension of a railroad within or near the limits of the village corporation. The corporation attempted to act under this authority and to raise by loan a sum of

money to be used in aid of the building of the railroad. Upon a bill in equity asking for an injunction to restrain the corporation from proceeding further in this purpose, this court sustained the bill and granted the injunction upon the ground that the aid intended thus to be furnished by the village corporation for the building of a railroad would necessarily result in unequal taxation upon the property in the town, the property within the limits of the village corporation alone being taxed for a public purpose, or in case the town itself, under legislative authority should vote to grant aid to the same enterprise, then the property within the limits of the corporation would be subject to taxation by the town, as well as by the village corporation, for the same purposes, resulting, in either case, in unequal taxation.

The correctness of this decision cannot be questioned. The legislation in that case, and the action of the corporation under it, not only permitted, but made unequal taxation inevitable. But that case is to be distinguished from this in many important and controlling respects, and although in the opinion in that case certain expressions are used, which, taken by themselves, would seem applicable to the facts here involved, we do not consider it an authority for this contention of counsel. In the Farmington case the unequal taxation that would have resulted had not the action of the corporation been restrained, grew out of the aid to be granted in building a railroad, an improved highway, for the general benefit of the public at large, but the village corporation was not created for the purpose of building and maintaining highways; that burden is ordinarily placed by the sovereign power upon the towns. The property within the limits of the Farmington Village corporation was also within the limits of the town of Farmington and subject to its due share of the burden of building and maintaining highways, or of aiding in the building of railroads, in case the town should grant such aid under legislative authority, and this was the very reason why unequal taxation in that case should have necessarily resulted.

But the village corporation in this case was originally created for the very purpose of providing protection against fire. By the amendment of 1887, as we have seen, its powers in this respect were greatly

enlarged, and in addition it was given power to obtain water for other municipal purposes, and by necessary implication from the ratification of the contract to purchase, the power to furnish water for domestic use to its inhabitants.   So that while in the Farmington case money was to be raised, eventually, by taxation upon the property within the village corporation to aid in a purpose for which it was in no way created, and which belonged to the general purposes of the town of which the village corporation was a component part, in this case the money to be raised by taxation upon the property within the limits of the village corporation, is in part to carry out a purpose for which the corporation was originally created, and in part within the powers and for the purposes granted and named in the amendment of 1887.   So that even if the corporation may be subject, in case of purchase, to the obligation to furnish water to persons, inhabitants of either of the towns but not of the corporation, to the very limited extent that is probable, this is but an incident to the general lawful purpose to be accomplished, through the purchase of the water plant, to furnish water for its own municipal uses and for the domestic use of its own inhabitants.

The railroad to be aided in the Farmington case was for the general benefit of the public at large, with only incidental benefits to the village corporation.   The purchase of the water-works system in this case is generally and primarily to carry out the lawful purposes of the village corporation, with incidental benefits to a small number of outside takers who happen to be located along the water main between the pumping station and the territory of the village corporation.

An illustration of this distinction may be found in the case of *Worden* v. *New Bedford*, 131 Mass. 23, 41 Am. Rep. 185, where the court decided that it was not ultra vires for a municipality to allow a public building built in good faith and used for municipal purposes, to be used incidentally for other purposes either gratuitously or for compensation.   The same distinction was recognized and clearly pointed out by this court in *Camden* v. *Camden Village Corporation*, 77 Maine, 530, where the question was whether a building owned and used by the village corporation for its municipal

purposes became taxable in the town where it was situated because certain portions of the building, when not used for municipal purposes by the corporation, were let for hire. The court said: "The letting of those parts of the building, which are not in actual use by the corporation are incidental and subsidiary to the objects for which it was created, and do not take away its character as a public building, or render it liable to taxation by the town as it would be were this a private corporation and its building erected for private purposes. Many city and town halls in this state are so constructed that when not in use for strictly municipal purposes, they may be let for any proper use. Such fitting up and letting for hire are the incidents, and not the primary objects of such public building."

Again, while in the Farmington case unequal taxation would have inevitably resulted from the contemplated action of the village corporation, we do not think that it can be assumed in this case that the taxation of the property within the village corporation will ever be increased in the slightest degree by the fact that the corporation as a purchaser of this property may incidentally be obliged to furnish water to a few takers who reside outside the limits of the corporation, because if it should furnish water for domestic use in such cases we must presume that it will receive therefor a reasonable compensation, so that the burden of taxation upon property within the corporation limits will not be increased to any extent whatever.

We are therefore of the opinion, that the sovereign power of the state may authorize a municipal corporation, as one of the agencies of government, to purchase and pay for, by money raised by taxation or otherwise, an existing water-works system for the purpose of supplying water for its own municipal wants and for the domestic uses of its inhabitants; and that, if such purchase is made in good faith for these main and primary purposes, the constitutionality of the legislation authorizing such purchase, and the action thereunder, including the raising of money by taxation therefor, is not affected by the fact that incidentally and entirely subsidiary to these main and primary purposes in the purchasing of the property, the municipal corporation may be compelled to carry out the obligation of

the original water company in furnishing water for some takers outside of the limits of the purchasing municipality.

For these reasons we are satisfied that the acts of the legislature of 1887, were sufficient to ratify and make valid the contract between the village corporation and the water company; that the act amending the charter of the Dover and Foxcroft Village Fire Company gave to that corporation, by express grant or by necessary implication, the authority to carry out that contract by a purchase of the water-works system, and, subsequent to such purchase, to maintain and operate the same; and that this legislation was not in violation of the provisions of our state constitution above referred to.

This bill in equity will consequently be dismissed with one bill of costs for the respondents, and a decree to that effect will be filed below.

*So ordered.*