## TOWN OF EAST MILLINOCKET

v.

## TOWN OF MEDWAY.

Supreme Judicial Court of Maine.

Argued June 20, 1984.

Decided Jan. 17, 1985.

Tanous & Beaupain, Dean A. Beaupain (orally), Jeffrey W. Jones, Millinocket, for plaintiff.

Bernstein, Shur, Sawyer & Nelson, Christopher L. Vaniotis, Geoffrey H. Hole (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

NICHOLS, Justice.

The Defendant, the Town of Medway, appeals from a judgment of the Superior Court (Penobscot County) declaring certain water works belonging to the Plaintiff, the Town of East Millinocket, and located in Medway, to be exempt from property taxes under 30 M.R.S.A. § 4262 (1978); ordering an abatement of the taxes assessed thereon in 1980 and 1981, and also ordering a refund of taxes and interest paid by the Plaintiff under protest. We affirm the Superior Court's ruling with respect to section 4262 and conclude that the Defendant is required to refund both the principal and interest on taxes already paid.

Until December 28, 1979, the Northern Water Company, a private Maine corporation, furnished water service to the inhabitants of the Town of East Millinocket as well as to some twenty-eight residences located on Wilderness Drive in Medway. The company's assets included several parcels of land, three wells, three pumphouses and a storehouse located in the Town of Medway upon which the Defendant had levied and collected real estate taxes.

By referendum vote, on June 28, 1979, and again on December 26, 1979, the Town of East Millinocket authorized the selectmen, pursuant to the Revenue Producing Municipal Facilities Act, 30 M.R.S.A. §§ 4251–4264, to issue revenue bonds in order for that town to purchase the assets of Northern Water Company. The Public Utilities Commission approved the transfer of the company's assets to the Plaintiff by order dated December 27, 1979. A deed was executed to implement the transfer on

December 28, 1979. Several weeks later, on February 2, 1980, Chapter 67, P. & S.L., 1979, was enacted, authorizing the Town of East Millinocket to acquire the water system through the issuance of general obligation bonds, pursuant to 30 M.R.S.A. § 5152 (1978).

The Defendant assessed taxes for the year 1979 against Northern Water Company on the property located in Medway, and received payment from the company for its prorated share. The Plaintiff town then paid the Defendant the balance of the 1979 taxes according to the terms of its purchase and sale agreement with Northern Water Company. In 1980 and 1981 the Defendant proceeded to assess a tax on the same property in the amounts of $7,265.50 and $9,450.00, respectively. Neither tax was paid by the Plaintiff town. The Defendant subsequently recorded a lien on the property for the amount of the 1980 taxes.

In January, 1982, the Plaintiff applied to the assessors of the Defendant town, pursuant to 36 M.R.S.A. § 841(1) (Supp.1984–1985), for abatement of both the 1980 and 1981 taxes on the grounds that its property was exempt from taxation under both 36 M.R.S.A. § 651(1)(E) and 30 M.R.S.A. § 4262. Both applications were denied. The Plaintiff then applied to the Penobscot County Commissioners for the same abatements, pursuant to 36 M.R.S.A. § 844 (Supp.1984–1985). The commissioners refused even to entertain the appeal because the Plaintiff town asserted an exemption rather than grounds for an abatement.

On April 7, 1982, the Plaintiff commenced this action in Superior Court, seeking review under M.R.Civ.P. 80B of the decision denying abatement of the 1980 and 1981 property taxes; removal of the tax lien; and a declaratory judgment that the property is tax exempt. In order to prevent the tax lien from maturing before these claims were adjudicated, the Plaintiff paid the Defendant under protest $10,097.16, representing the sum of the taxes,

interest and other fees assessed for the 1980 tax year. The case was submitted on a stipulated record and decided by the Superior Court without oral argument. That court ruled that the Plaintiff's water works property located in Medway was not exempt under 36 M.R.S.A. § 651(1)(E), but was exempt as a proper revenue producing municipal facility under 30 M.R.S.A. § 4262. Judgment was entered declaring the property to be exempt, granting an abatement of all taxes assessed in 1980 and 1981, and ordering the Defendant to refund the entire sum of $10,087.16 paid under protest, with interest. The Defendant promptly appealed to this Court, and the Plaintiff cross-appealed.

■ This appeal turns on the proper construction of section 4262 of the Revenue Producing Municipal Facilities Act, 30 M.R.S.A. §§ 4251–4264 (1978 & Supp.1983–1984), which provides in pertinent part:

> As proper revenue producing municipal facilities as defined are essential for the health and safety of the inhabitants of the municipalities, and as the exercise of the powers conferred to effect such purposes constitute the performance of essential governmental functions, *and as municipal facilities acquired or constructed under this chapter constitute public property and are used for municipal purposes, no municipality shall be required to pay* any *taxes* or assessments *upon any ... water or sewer system ...* revenue producing municipal facility, or any part thereof, *whether located within or without the corporate limits of the municipality.* (Emphasis added).

The term "revenue producing municipal facility" is defined in 30 M.R.S.A. § 1901(11) (1978) as "an airport, or a parking facility or a water system or a sewage disposal system."[1] No reference is made in the definition to the method of financing such a facility.

The Defendant contends, nevertheless, that the use of the word "proper" to modi-

---

1. A "water system" is further defined in 30 M.R.S.A. § 1901(18) to encompass

fy "revenue producing municipal facilities" in section 4262 indicates that the Legislature intended to exempt from tax only those facilities actually acquired and financed with revenue bonds as provided by the statute. According to the Defendant's interpretation, the Plaintiff's facility is not tax exempt because it was acquired under the authority of private and special legislation and financed with general obligation bonds.

In order to determine the full scope and effect of section 4262, we must consider it in the context of the entire statutory scheme. *Seven Islands Land Company v. Maine Land Use Regulation Commission,* 450 A.2d 475, 480 (Me.1982). The Defendant is correct in pointing out that most of the provisions of the Revenue Producing Municipal Facilities Act are concerned with the mechanics of financing such facilities with revenue bonds; but such is not the only purpose of the statute. A close reading of section 4251, in particular, shows that the Act accomplishes two basic purposes: Subsection 1 authorizes and empowers a municipality to acquire, maintain and operate a water system or other type of revenue producing facility, and subsection 2 authorizes the issuance of revenue bonds to pay the cost of such a facility.[2] In the absence of the first provision, no municipality would have authority to acquire or to operate any of the facilities listed in the Act, regardless of the method of financing, unless it obtained express permission from the Legislature. *See Mayo v. Dover & Foxcroft Village Fire Co.,* 96 Me. 539, 53 A. 62 (1902) (until such power is vested in it by legislative action, a public corporation has no power to acquire or to construct a water works system). Similarly, without the authorization in subsection 2, a municipality such as the Plaintiff would be unable

to finance these or any other projects with revenue bonds. These two enabling provisions of the statute are clearly interrelated, but that does not necessarily mean that a municipality must rely on both in order to obtain tax exempt status under section 4262.

The record in this case indicates, contrary to the Defendant's assertion, that the Plaintiff did rely on the authority granted by section 4251(1) when it acquired the assets of Northern Water Company. Although the special legislation also contained an enabling provision, it was not even enacted until several weeks after the deed transferring the property was executed on February 2, 1980. This compels the conclusion that the Plaintiff's water system is "a municipal facilit[y] acquired or constructed under this chapter," as described in section 4262.

The primary purpose of the special legislation, as expressed in the emergency preamble, was to authorize the issuance of general obligation bonds to finance the acquisition of the water system—something which the Plaintiff was not empowered to do under existing statutes. Since the Town of East Millinocket had already voted to approve the issuance of revenue bonds, as required by section 4252 of the Act, chapter 67 presumably was enacted merely to give them the option of using general obligation bonds instead.

The Legislature has expressed a desire to encourage such choices by declaring in section 4263 that the Act "shall be deemed to provide an *additional* and *alternative* method for the doing of the things authorized and shall be regarded as supplemental and additional to the powers conferred by other laws." (Emphasis added). If the Legislature had wanted to restrict the tax exemption to facilities "financed with reve-

---

all plants, systems, facilities or properties used ... in connection with the supply or distribution of water, ... including ... wells, mains, ... aqueducts, pumping stations, ... hydrants, meters, valves and all necessary appurtenances and equipment and all properties, rights, easements and franchises relating thereto and deemed necessary or convenient

by the municipal officers for the operation thereof.

2. The Act also includes provisions enabling municipalities to conduct related activities such as acquiring land, collecting usage fees and entering into contracts necessary for the development and operation of revenue producing facilities. *See* 30 M.R.S.A. § 4251(4)–(13).

nue bonds," it easily could have done so by adding those words either to section 4262 or to the definitional provisions of the statute. Because no such limiting phrase was inserted in the statute, and given the admonition contained in section 4264 that the Act "shall be liberally construed," we conclude that the Superior Court was correct in declaring the Plaintiff's facility to be exempt from tax under 30 M.R.S.A. § 4262.[3]

■ Concluding, as we do, that the property is tax exempt, the Defendant's contention that it should be required to refund only the principal and not the interest on the 1980 taxes is without merit. The exemption applies as of the date the Plaintiff acquired the property in Medway from Northern Water Company.[4] Therefore, the tax was illegal from the date of its assessment. *See Talbot v. Inhabitants of Wesley*, 116 Me. 208, 100 A. 937 (1917). 36 M.R.S.A. § 152 (Supp.1984–1985) allows taxpayers the option of paying or not paying a tax that is assessed, without forfeiting their right to apply for an abatement or to seek review of the validity of a tax. The taxpayers who elect to pay first, and challenge the tax later, should not be penalized by forfeiting the interest that may accrue during the pendency of an abatement proceeding. Accordingly, we uphold the Superior Court's judgment ordering the Defendant to refund both principal and interest to the Plaintiff.

The entry must be:

Judgment affirmed.

ROBERTS and GLASSMAN, JJ., concurring.

WATHEN, Justice, with whom McKUSICK, Chief Justice, and SCOLNIK, Justice, join concurring.

I concur in the result because I would find the property to be tax exempt under 36 M.R.S.A. § 651(1)(E). I disagree, however, with the Court's opinion that the tax exemption provided by 30 M.R.S.A. § 4262 is applicable to this case. By relying on the continued vitality of our opinion in *Mayo v. Dover & Foxcroft Village Fire Company*, 96 Me. 539, 53 A. 62 (1902), and disregarding the intervention of municipal home rule (30 M.R.S.A. § 1917 (1978)), the Court comes to the erroneous conclusion that plaintiff relied on the authority granted by section 4251(1) when it acquired the assets of Northern Water Company.

I would confine the tax exemption under section 4262 to those instances in which a water system was acquird or constructed through the use of revenue bonds. The legislature clearly intended to protect the bondholder's interest in the revenue, which is their only source of payment, from local taxation. I would not construe section 4262 as creating a blanket exemption from taxation without regard to the method of financing.

---

**3.** Because we uphold the tax exemption on the basis of section 4262, we need not reach the merits of the Plaintiff's cross-appeal concerning the applicability of the exemption provision in 36 M.R.S.A. § 651(1)(E).

**4.** In contrast to the cases involving tax exemptions for pollution control facilities, *e.g., Connecticut Bank & Trust Co. v. City of Westbrook*, 477 A.2d 269 (1984), no certification or other type of administrative ruling is necessary to grant tax exempt status under section 4262.