STATE OF MAINE                              SUPERIOR COURT
WALDO, SS.                                  Docket No. CV 01-022

FCM- WAL-7/16/2001

Inhab. of Town of Northport, )
        Plaintiff,       )
                     )
                     )
        v.            )    **ORDER ON MOTION TO DISMISS**
                     )
                     )
Northport Village Corpor.  )
        Defendant.     )

Waldo County Superior Court

JUL 16 2001

REC'D AND FILED
Joyce M. Page, Clerk

      This matter is before the Court on the Defendant's Motion to Dismiss. That motion was filed after the complaint was served in accord with Rule 4(c)(1). No answer has been filed.

      Simultaneously, Defendant filed materials outside the record and asserted that this matter is before the Court as one for summary judgment as well. See Rule 12(b) and Rule 56(b) M.R.Civ.P[1]. The Plaintiff in its responses has dealt with the materials filed which are outside the Rule 12(b)(6) motion and to that end has suggested that there are other matters which it would file if the motion for dismissal is not granted.

      The undisputed facts demonstrate that the Plaintiff is a town with all of the municipal authority which towns have under Maine law. The Defendant is a summer community, for the most part, which is a successor to the Northport Wesleyan Grove Campmeeting Association[2] which

---

1. Defendant's responsive filing demonstrates that matters outside the record were to be filed notwithstanding the description of the motion as **"DEFENDANT'S MOTION PURSUANT TO Me.R.CIV.P. 12(b)(6)."**

2. See Northport Weslayan Grove Campmeeting Association v. Andrews, 104 Me. 342 (1908).

originated in the 19th century as a prayer colony. It is picturesquely situate on a hill on the west side of Penobscot Bay near a wharf which, years ago, offered Bangor residents the opportunity to travel down the Penobscot River and across the mouth of Belfast Harbor by steamship for their summer meeting.

The attachment of several cases demonstrate that the power and authority of the Defendant has been challenged in various ways from time to time. The unreported case of <u>Lucerne in Maine Village Corporation v. Blackmer</u>, Mem 00-039 includes interesting language suggesting that the authority of village corporations is available through special legislation under the Maine Constitution, Article IV, pt. 3, § 14.

In its argument the Defendant has taken the position, in this Court's view, that it is easier for the Court to analyze its position by reviewing matters presented by affidavit or otherwise. The Plaintiff says it is being deprived of its procedural rights by not having the benefit of the Defendant's answer which would require the Defendant to address each point raised by the Plaintiff in its complaint. Moreover, the Plaintiff says it would take relevant depositions which would strengthen its case. It argues convincingly that it is at this point denied that opportunity.

In this Court's view, the Defendant has a subsumed premise that it will prevail as a result of matter presented which are beyond the scope of the pleadings. It demonstrates what the Law Court said some years ago in analyzing Rule 12(b)(6) and Rule 12(c) motions that "extra-pleading matters presented must be either deposition, admissions or affidavits." <u>Westman v. Armitage</u>, 215 A.2d 919,921 (Me. 1966). This Court believes that the Plaintiff is entitled to Defendant's answer and to do discovery by deposition if it wishes before the issue can be properly before the Court. That is because the Plaintiff is not required to respond in the procedural way devised by the Defendant without full agreement between counsel.

Accordingly, because matters outside the record were presented for the Court's consideration, the Motion to Dismiss is DENIED and the Motion for Summary Judgment is STAYED pending Defendant's Answer and such

discovery as the parties, meaning Defendant as well, wish to do thereafter. At any appropriate time, either party may move for summary judgment.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R.Civ.P Rule 79 (a).

Dated:  July 16, 2001

_____
FRANCIS C. MARSANO
JUSTICE, SUPERIOR COURT

Date Filed __May 2, 2001__     _____WALDO_____     Docket No. ___CV-01-22___
                                     County

Action _Declaratory Judgment & Perm. Inj. Relief_


INHABITANTS OF THE TOWN OF NORTHPORT        VS. NORTHPORT VILLAGE CORPORATION

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| William S. Kelly, Esq.<br>96 High St.<br>Belfast, ME 04915<br>Tel: 338-2702 | Judy A.S Metcalf, Esq.<br>EATON, PEABODY, BRADFORD & VEAGUE, PA<br>PO Box 9<br>Brunswick, ME 04011-0009<br>Tel: 729-1140 |

| Date of Entry | |
|---|---|
| 05/02/01 | Complaint for Declaratory Judgment and Request for Permanent Injunctive Relief dtd. Apr. 6, 2001, filed.<br>Summary Sheet filed.<br>Acceptance of Service, Waiver and Entry of Appearance dtd. Apr. 27, 2001, filed by Judy A. S. Metcalf, Esq. for Northport Village Corporation with Summons and Acknowledgement attached. |
| 05/03/01 | Case File Notice to Atty. Kelly. |
| 05/15/01 | Deft's Motion to Extend Time to Respond to Plff's Complaint dtd. May 14, 2001, filed with proposed order thereon. |
| 05/22/01 | Deft's Motion to Dismiss pursuant to M.R.Civ.P. 12(b)(6) dtd. May 18, 2001, filed.<br>Deft's Memo of Law in Support of Motion to Dismiss, filed.<br>Statement of Material Facts as to which there is no Genuine Issue, filed.<br>Affidavit of Peter R. Allen, filed.<br>Request for Hearing on Motion and Proposed Order, filed. |
| 06/01/01 | 05/31/01: Motion to Extend Time to Respond to Plff's Complaint granted. Time to file responsive pleading extended to May 24, 2001. (Marsano, J. |
| 06/01/01 | Notice of entry and copy Order on Motion to attys. Kelly and Metcalf. |
| 06/05/01 | Plff's Motion to Extend Time to Respond to Deft's Motion to Dismiss and Motion for Summary Judgment dtd. June 5, 2001, filed. |
| 06/07/01 | Order signed, filed and entered. (Mead, C.J.<br>Motion granted. Plff. shall file responsive pleadings to Deft's Motion to Dismiss and Motion for Summary Judgment on or before June 15, 2001. |
| 06/07/01 | Notice of entry and copy Order to attys. Kelly and Metcalf. |
| 06/11/01 | Plff's Responsive Pleadings to Deft's Motion to Dismiss and Motion for Summary Judgment dtd. June 7, 2001, filed. |
| 06/11/01 | Plff's Response to Deft's Statement of Material Facts dtd. June 7, 2001, filed. |
| 06/11/01 | Affidavit of Frank Therio dtd. June 7, 2001, filed by Plff. |
| 06/11/01 | Affidavit of Denise Lindahl dtd. June 7, 2001, filed by Plff. |

STATE OF MAINE

WALDO, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-01-022

URA-WAL-1/31/2003

INHABITANTS OF THE
TOWN OF NORTHPORT,

DONALD L. GARBRECHT
LAW LIBRARY

FEB 5 2003

Plaintiff

v.

NORTHPORT VILLAGE
CORPORATION,

Defendant

DECISION AND ORDER

STATE OF MAINE
WALDO COUNTY
SUPERIOR COURT

JAN 31 2003

RECEIVED AND FILED
Joyce M. Page, Clerk

I.      Introduction.

In this matter, the Inhabitants of the Town of Northport (town) brought an action seeking a declaratory judgment that the Northport Village Corporation (NVC or "village") has no legal authority to appoint its own code enforcement officer (CEO) and that only the town's selectpersons may appoint such an official to enforce land use ordinances within the town and the village. The town also seeks an injunction permanently barring NVC from appointing a CEO until the Legislature gives it the authority to do so.

The parties filed cross-motions for summary judgment seeking favorable disposition in this dispute as to the respective authority of each to enforce NVC's land use ordinances within its boundaries. As the issue has been briefed and argued, it is in order for disposition.

II.     Facts.

The facts, which are material to this dispute, are not contested and can be restated as follows:

The town is an incorporated municipality and NVC is an incorporated village corporation whose territory lies entirely within the boundaries of the town. The latter exists by virtue of the Private and Special Laws of 1915, chapter 136, which authorized its charter. This Act was amended in 1919 and 1957. P. & S.L. 1919, ch. 146; P. & S.L. 1957, ch. 155. NVC is overseen by a president, a clerk, a treasurer, and seven overseers who are elected by residents of the village.

NVC adopted a zoning ordinance (ZO) on August 22, 2000. It provides for the appointment of a CEO by the Board of Overseers to enforce the ZO. The ZO further provides: "[r]eference to the Code Enforcement Officer may be construed to include Building Inspector, Plumbing Inspector, Electrical Inspector and the like where applicable." Zoning Ordinance of The Northport Village Corporation (ZONVC), § 2.2. It also stipulates that a plumbing permit from the town is necessary before building a sanitary plumbing facility and an electrical permit must be obtained from the town before NVC will issue a building permit "involved in the installation of wiring or electricity." Id. § 6.3(1), (2). If the CEO finds a violation of the ZO, which persists after he has ordered it corrected, the village attorney may institute an enforcement action in the name of the NVC. Id. §§ 6.5, 6.6. On January 20, 2002, NVC appointed a CEO to enforce its ZO.

NVC's ZO recites that the town's shoreland use ordinance of 1991, with amendments, applies to NVC "only to the extent that land within the Village lies within the Town's Shoreland Zone." ZONVC § 1.12.

The town has never adopted a charter, but enjoys "home rule" authority and is governed by three elected selectpersons. The town also collects taxes on behalf of the NVC. It has adopted a shoreland zoning ordinance (SZO), which extends from the high-water mark inland for 250 feet. The parties agree that the town's SZO applies to

2

NVC and is enforceable there by the town's CEO. The town has appointed a CEO to enforce the SZO; he also serves as the building inspector, electrical inspector, and local plumbing inspector. The town has advised NVC that the former's CEO is available to enforce the ZONVC.[1] NVC refuses to accept the town's CEO to enforce the former's ZO.

## III. Discussion.

### A. Standing/Justiciability.

NVC challenges the standing of the town to pursue this action, claiming that there is no justiciable controversy for the court to address because only the potential of future harm may occur by virtue of NVC's hiring of a CEO, and that this action has not yet harmed the town.

The Declaratory Judgments Act, 14 M.R.S.A. §§ 5951-63, provides that, "Any person . . . whose rights, status or other legal relations are affected by a statute [or] municipal ordinance . . . may have determined any question of construction or validity arising under the . . . statute [or] ordinance . . . and obtain a declaration of rights, status or other legal relations thereunder." 14 M.R.S.A. § 5954. This statute is to "be liberally construed to provide a simple and effective means by which parties may secure a binding judicial determination of their legal rights, status or relations under statutes and written instruments where a justiciable controversy has arisen." *Hodgdon v. Campbell*, 411 A.2d 667, 669 (Me. 1980).

Our law, however, requires the plaintiff seeking declaratory relief to demonstrate that "the controversy between the parties is sufficiently 'real' so as to avoid the

---

[1] The defendant denies this fact as to its materiality. The court finds that this fact is properly supported by a record reference and is "material" in that its existence is capable of affecting the outcome of the case, particularly as to the existence of a justiciable controversy. *See Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575) ("A fact is material if it has the potential to affect the outcome of the case under governing law.")

constitutional prohibition against rendering advisory opinions . . ." *Perry v. Hartford Accident and Indemnity Co.*, 481 A.2d 133, 136 (Me. 1984). "A real controversy is present where the plaintiff 'set[s] forth a claim of right or obligation buttressed by a sufficiently substantial interest to warrant judicial protection and assert[s] it against a defendant having an adverse interest in contesting it.'" *Id.* (quoting *Allstate Insurance Co. v. Lyons*, 400 A.2d 349, 351 (Me. 1979)). "A case is fit for judicial decision when there exists a genuine controversy between the parties that presents a 'concrete, certain and immediate problem.'" *Waterville Industries, Inc. v. Finance Authority of Maine*, 2000 ME 138, ¶ 22, 758 A.2d 986, 992 (quoting *Wagner v. Secretary of State*, 663 A.2d 564, 567 (Me. 1995)).

In this case, the parties dispute the interpretation and application of several statutes. First among them is the private and special law which chartered the NVC and created its system of governance. Does the charter permit the president and overseers to appoint a CEO, as municipal officials do in regular municipalities? By their actions, the NVC officials have answered that question affirmatively by adopting an ordinance which provides for a CEO and then filling that position. The town contests this action, arguing that it alone has the authority to hire a CEO who is to enforce the ordinances within both NVC and the town. In doing so, they rely on statutory provisions which can be read to limit the authority to appoint CEO's to "municipal officers," and a statutory definition of that phrase which would exclude the governing officers of a village corporation so that they would not have this authority. *See* 30-A M.R.S.A. §§ 2001(10); 2601-A.

4

While this restatement may oversimplify the dispute, it does illustrate that it is real and subject to a live controversy. Thus, the circumstance that the NVC has appointed a CEO who, presumably, is currently enforcing its ordinances means that the town and its CEO are expected to leave enforcement of the ZONVC to the village's CEO. Does the town's CEO respect this exclusion, or does he attempt to enforce the ZONVC pursuant to the authority he and the town officers believe he possesses? To leave these questions unanswered means that two officials, exercising different discretionary judgments, answering to different superiors, and referring cases to different attorneys, are in a position to enforce the same ordinance in the same geographical, political entity. As one of these officials may lack any authority to enforce the ZONVC, not only do the officials of these two government entities have a stake in resolving this dispute, so do their residents who may, conceivably, be subject to an enforcement action by an official without authority to so act.

In the court's view, this case presents a conflict over the interpretation of statutes and an ordinance, which presents a current and real controversy. The parties to this controversy are adverse and have a real interest and stake in its resolution, which will yield specific relief. *Madore v. Maine Land Use Regulation Comm'n*, 1998 ME 178, ¶¶ 7, 8, 715 A.2d 157, 160. Under such circumstances, reliance on the Declaratory Judgment Act is appropriate and the court must undertake the task of resolving the dispute. Accordingly, the merits of this controversy will be addressed in this Decision and Order.

**B.    NVC's Authority to Appoint a CEO.**

"Towns . . . are mere agencies of the State. They are purely creatures of the Legislature and their powers and duties are within its control . . . . [That control] is absolute and all embracing except as expressly or by necessary implication limited by

5

the Constitution." *City of South Portland v. State*, 476 A.2d 690, 693 (Me. 1984) (quoting *Opinion of the Justices*, 133 Me. 532, 535, 178 A. 613, 615 (1935)). "Being a creature of statute, [a village corporation] had only such powers as were conferred by statute expressly or by necessary implication." *Phillips Village Corp. v. Phillips Water Co.*, 104 Me. 103, 106, 71 A. 474, 475 (1908) (*cited with approval* in *City of South Portland v. State*, *id.*). Thus, the question to be addressed is whether or not the village charter, as affected by the general statutes which concern the powers of municipalities, authorizes NVC to appoint a CEO. If not, the law here cited would prohibit the exercise of this authority.

The charter for NVC provides for the election of corporate officers, namely a president, a clerk, a treasurer, and seven overseers. P. & S.L. 1915, ch. 136, sec. 7. The overseers "shall be the general municipal officers of said corporation and shall have general charge of its affairs and of the expenditures of its moneys, except so far as the same may be committed to other officers or persons." *Id.*, sec. 10

NVC is also authorized to raise money for a variety of purposes; the detailed list of these, however, makes no mention of expending village funds to hire a CEO. *Id.*, sec. 2. The money for these enumerated items is to be assessed and collected by the town, which, in turn, pays over these sums to the village treasurer. *Id.*, secs. 6, 11.

NVC also has the same powers and duties as possessed or imposed on towns "with respect to buildings located within the territorial limits of said village, and their use or occupancy . . ." P. & S.L. 1919, ch. 46, sec. 2. As a village corporation, it also has the authority to enact ". . . land use regulation ordinances, subject to the same guidelines and standards which apply to municipalities under chapter 187.[2] When a

---

[2] Chapter 187 is lengthy, but three sections are relevant to this case: §§ 4406, 4451, and 4452. They allow a municipality to enforce its subdivision ordinance, prescribe the standards for training and certification of CEOs, and describe the authority of a municipal official who is designated to enforce ordinances, such

6

conflict exists between a land use regulation ordinance of a village corporation and an ordinance of the municipality of which it is a part, the municipal ordinance prevails." 30-A M.R.S.A. § 6303. From all this, it is plain that NVC has the authority to enact ordinances affecting land use as the Legislature has specifically ascribed that power to village corporations, including NVC, via its charter and this general grant of authority.

The Legislature has also made express provisions as to the appointment of municipal officials. Thus, "[e]xcept where *specifically* provided by law, charter or ordinance, the municipal officers shall appoint all municipal officials and employees required by general law, charter or ordinance . . ." 30-A M.R.S.A. § 2601(1) (emphasis supplied). In this regard, "[m]unicipal officers may appoint code enforcement officers . . ." 30-A M.R.S.A. § 2601-A; 38 M.R.S.A. § 441. "Municipal officers" are defined as "the selectmen or councilors of a town; or [t]he major and aldermen or councillors if a city." 30-A M.R.S.A. § 2001(10)(A), (B).

From this it must be concluded that the Legislature has expressly conferred on "municipal officers" the authority to appoint a CEO and that village corporation officials, because they are not included in the definition of "municipal officers," were denied that power. Because a village corporation, and its officials only have the authority expressly or impliedly granted to them, their exclusion from the provisions which directly address the authority to appoint CEO's must be seen as an intent to limit such authority to "municipal officers" as the Legislature has defined that phrase. "When the Legislature has intended to treat village corporations as municipalities, it has done so explicitly." *Rackliffe v. Northport Village Corp.*, 1998 ME 114 ¶ 7, 711 A.2d 1282, 1284. Because it has not "specifically" done so here, 30-A M.R.S.A.§ 2601(1), it

as a CEO. The chapter does not specifically address the authority to appoint a CEO, but if NVC does have such authority, it must meet the standards and guidelines within chapter 187.

7

must be concluded that village corporation officials lack the necessary legislative grant of authority to appoint a CEO.

A fair reading of the village charter is not inconsistent with this conclusion. In it, the overseers are to be the municipal officers of the corporation "with general charge of its affairs . . . *except so far as the same may be committed to other officers or persons.*" P. & S.L. 1915, ch. 136, sec. 10. So, while the overseers are to act as NVC's municipal officers, they may not do so when its municipal "affairs" are committed to others. Because the Legislature has chosen to assign the "affair" of appointing a CEO to "municipal officers," which are defined as selectmen, 30-A M.R.S.A. § 2001(10)(A), it must be deduced that the legislative intent was to give the authority to appoint a CEO in NVC to the town's selectmen.

This conclusion is also consistent with the current governance of these two entities. NVC can determine how much money it needs for its corporate purposes, upon which the town must assess this amount upon the estates within NVC, collect this sum, and pay it over to NVC's treasurer. P. & S.L. 1915, ch. 136, sec. 11. So too, NVC can enact land use ordinances which, because they affect land wholly within Northport, can be enforced by the town's CEO.

Thus understood, this case is distinguishable from those in which the Law Court has found village authority to act when such power proceeded by necessary implication from a provision in its charter or enabling legislation. *See, e.g., Mayo v. Dover Foxcroft Village Fire Company,* 96 Me. 539, 555-57, 53 A. 62 (1902); *Paul v. Huse,* 112 Me. 449, 450, 92 A. 520 (1914). In these cases the village corporations were given legislative authority to act on particular matters, but not the specific legal tools to carry out such authority. In such instances the Law Court found that it necessarily followed that a village corporation must be able to act on its authority otherwise, presumably, such a grant of

8

authority would be meaningless. In the case at bar, however, while NVC has been given the power to enact land use ordinances, but none to enforce them, such power is not an empty one as the town does have the authority to enforce NVC's ordinance. Thus, NVC's land use ordinances are enforceable and the legislative purpose in granting this village the power to enact them is not frustrated.

By the same reasoning, because the Legislature has specifically assigned the power to appoint CEO's and enforce land use ordinances to certain, defined officials, those officials, per force, can act on NVC's ordinance so that it is enforced. That is because, unless otherwise specifically provided by law, the "municipal officers" appoint all those municipal officials required by law, a charter or an ordinance. 30-A M.R.S.A. § 2601(1). So, it may be concluded that because a fair reading of NVC's ordinance requires the appointment of an enforcement official, the town's selectmen, as "municipal officers" are to do so, there being no specific provision in law to the contrary. *Id.* Moreover, as the court has here concluded, that authority belongs to the town's selectmen, to the exclusion of NVC's overseers.[3]

## IV. Conclusion.

Based on the foregoing, the court has determined that there is no material fact in dispute and that the plaintiff is entitled to judgment as a matter of law on its complaint. M.R. Civ. P. 56(c).

Accordingly, the clerk will make the following entries:

Judgment is ENTERED for the plaintiff.

The court FINDS and DECLARES that the Northport Village Corporation has no authority to appoint a Code Enforcement Officer to enforce its land use regulation ordinances and, further, that only the Town

---

[3] Residents of NVC are not without power to effectuate enforcement of the village's ordinances. First, they are also voters in the town and therefore have a say in its governance. P. & S.L. 1915, ch. 136, sec. 12. They also have access to this court to seek action. M.R. Civ. P. 80B(a).

9

of Northport's municipal officers have the authority to appoint a Code Enforcement Officer to enforce land use regulation ordinances within the Northport Village Corporation and/or the Town of Northport.

The Northport Village Corporation and its municipal officials are hereby ENJOINED from appointing a Code Enforcement Officer until such time as the Legislature may otherwise specifically provide.

So ordered.

Dated: January 29, 2003

John R. Atwood
Justice, Superior Court

10