## Hinesburg Sand & Gravel Co. v. Town of Hinesburg

[380 A.2d 64]

No. 310-76

Present: Barney, C.J., Daley, Larrow and Billings, JJ., and Smith (J., Ret.) Specially Assigned

Opinion Filed October 31, 1977

*Gravel, Shea & Wright*, Burlington, for Plaintiff.

*Lisman & Lisman*, Burlington, for Defendant.

**Larrow, J.** Plaintiff is a Vermont corporation with its principal place of business in the Town of Hinesburg, where it sells sand and gravel to the general public. The defendant Town also owns and operates a gravel pit nearby, and sells sand and gravel to corporations, municipalities and the general public, at established posted prices, whether or not the purchasers are residents of the Town. During the period 1972-1975, use from the Town pit for roads in the Town ranged from 10% to 16% of total sales and from $2456.70 to $9,422.20 in dollar volume. Sales to others, conversely, ranged from 84% to 90%, dollar volume from $16,306.20 to $54,138.58, and net profit on public sales from $3,534.15 to $30,628.32. The general dollar trend has been upward. During the same period, sales by the plaintiff of those materials also sold by the Town has been generally downward, while its sales of other materials have approximately quadrupled. In its action below plaintiff sought injunctive relief against operation of the gravel pit by the Town as a private business and the sale of gravel therefrom other than to the Town itself. It also sought monetary damages. The trial court, whose factual findings are substantially undisputed, denied relief upon the expressed grounds that the Town has "the incidental right to sell its surplus gravel," that the question is one for the Town to decide for itself, and that its "decision made in good faith" is final. *Valcour* v. *Village of Morrisville*, 104 Vt. 119, 131-32, 158 A. 83 (1932). We agree that this statement of the general rule has support in our decided cases. *Lucia* v. *Village of Montpelier*, 60 Vt. 537, 15 A. 321 (1888). But we cannot apply the general rule to the facts here presented and uphold the dismissal of plaintiff's complaint. The sales here involved are not, in our judgment, "incidental" to any legally authorized activity, nor are the materials so sold "surplus."

Fundamental to a decision here, and conceded by the parties, is the general proposition that, absent a home rule

constitutional provision, a municipality has only those powers and functions specifically authorized by the legislature, and such additional functions as may be incident, subordinate or necessary to the exercise thereof. *Valcour* v. *Village of Morrisville, supra;* 12 E. McQuillin, The Law of Municipal Corporations § 36.02 (3d ed. 1970). Perceiving no essential difference between the operation of a stone quarry and crusher and the operation of a gravel pit, we hold that *Bates* v. *Horner,* 65 Vt. 471, 27 A. 134 (1893), coupled with the requirement of 19 V.S.A. § 931(1) that a town keep its highways in repair, authorizes a town to operate a gravel pit to secure materials for use in road maintenance within the town. While not a "necessary" function, it is both "incident" and "subordinate" to fulfillment of a town's statutory duty. Incidental sale of a by-product (such as screened-out rock) to others could also be justified. Possibly, also, good faith overproduction might justify occasional and incidental sales, although from the imperishable nature of gravel the possibility of waste or spoilage is difficult to envision.

We are not, however, confronted with a factual situation in any way consonant with the "incidental" or "subordinate" sale. About seven-eights of the pit production is for private sale as against one-eighth for Town use. No amount of "good faith" rationalization can gloss over the fact the principal activity at the Hinesburg pit is a private business operation by the Town, in direct competition with the plaintiff. The fact that, at present rate of consumption, there will be a minimum of twenty years' supply of gravel at the site has no bearing whatever on the legal issue. If the Town regards its owned supply as excessive for its needs, it can reach a "good faith" decision (assuming original acquisition to have been warranted) as to whether to keep or sell excess acreage. But there is nothing "incidental" about processing eight times its own requirements of gravel, selling it in tax-free competition with the plaintiff, and realizing therefrom a $30,000 annual profit. This is the "public purpose...set up as a mere pretext to conceal a private purpose" which we spoke of in *Bates* v. *Bassett,* 60 Vt. 530, 536, 15 A. 200 (1888), and it is, as we there held, illegal. Whatever the scope of the Town's prior activity, not put in issue below, the activity of a grossly commercial nature which began in 1972 is neither incidental nor subordinate to any authorized town function. An

injunction is warranted because of the Town's expressed intent to continue the practice. We reach no constitutional issue; we simply hold that the town activity here, as delineated by the findings of the trial court, is not a legally authorized activity and is not incidental or subordinate to any legally authorized activity.

Further, as we indicated above, we do not consider the materials here being sold as "surplus" in any legal sense of the word. The amount of gravel produced is directly proportionate to the production effort. Unlike the water supply involved in *Lucia, supra,* and the generating capacity involved in *Valcour, supra,* the supply of new gravel will not go to waste if unprocessed, or spoil if processed and not immediately used or sold. We have here no "surplus running to waste," the salient feature of *Lucia.* Cf. *In re Barre Water Co.,* 62 Vt. 27, 33, 20 A. 109 (1889). Apart from the processing by the Town, the gravel supply in issue here will remain constant, available, and undepleted. It may be excessive for town needs, but it is not surplus in the sense of being subject to devaluation if not utilized.

■■ The question of damages is not briefed extensively by the parties. Defendant argues that there is no finding that defendant damaged the plaintiff. In view of the lower court's position that there was no liability, the absence of such a finding is quite understandable, even though its presence could well have obviated the necessity for a retrial. Since we have, in substance, held that the activities complained of were proprietary in nature and not governmental, and were also illegal, there seems no room for application of the doctrine of sovereign immunity. And difficulty of computation does not preclude assessment of damages; evidence allowing estimation of the damages with reasonable certainty is sufficient to call for the exercise of sound judgment and to require a decision. *Vermont Electric Supply Co.* v. *Andrus,* 132 Vt. 195, 200, 315 A.2d 456 (1974).

*Judgment reversed, and cause remanded for entry of judgment enjoining the complained of activities of the defendant in accordance with the views herein expressed, and for rehearing on the issue of damages alone.*