**CENTRAL VERMONT QUALITY SERVICES, INC., Roy Jacobsen d/b/a Jake's Light Trucking, B & B Inc., and D.M. Hubbard**

v.

**CITY OF RUTLAND, VERMONT.**

Civ. No. 91–265.

United States District Court,
D. Vermont.

Dec. 20, 1991.

Alan Philip Biederman, Biederman and Rakow, Rutland, Vt., for plaintiffs.

John Paul Faignant, Miller and Faignant, Rutland, Vt., Frank H. Zetelski, Office of the City Atty., City of Rutland, Rutland, Vt., for defendant.

OPINION AND ORDER

BILLINGS, District Judge.

On November 12, 1991, defendant City of Rutland (hereinafter "City") filed a motion for summary judgment in the above-entitled action. Likewise, on November 14, 1991, plaintiffs filed a motion for summary judgment. The parties have filed a stipulation of agreed upon facts, some of which are set forth below. A hearing on the cross motions for summary judgment was held on December 16, 1991. For the reasons set forth herein, plaintiffs' motion for summary judgment is granted, and defendant's motion for summary judgment is denied.

BACKGROUND

In 1987, the Vermont Legislature passed Act 78, a comprehensive solid waste management law. Act 78 has been codified at 10 V.S.A. § 6601 *et seq.* and 24 V.S.A. § 2201 *et seq.* 10 V.S.A. § 6604 requires the Secretary of the Agency of Natural Resources (hereinafter "Secretary"), to

adopt a waste management plan, in accordance with specific requirements established by the Legislature, that sets forth a comprehensive state-wide strategy for the management of solid waste. Pursuant to § 6604, the Secretary promulgated a "state plan" to provide a framework for Vermont's solid waste efforts.

After creation of the state plan, the Board of Aldermen of the City of Rutland decided to establish a franchise system to collect residential solid waste and trash. Under this system, the City will be divided into 13 franchise areas each consisting of approximately 525 residential units. Each franchise area will be awarded to one specific trash hauler by a bid process, and no trash haulers other than the franchised haulers will be permitted to collect any residential solid waste. Thus, the franchise program is an exclusive-type program.

Resident participation in the program is voluntary. The City will bill those residents who choose to have trash collected at their homes, and the residents will pay the City itself, not the franchised hauler, for trash collection. The City will then pay the franchised haulers the contract price. The City is free to set the rates for trash collection, and may change those rates as it chooses.

All residents who participate in the program will be required to separate recyclable materials. All haulers in the franchise system who collect residential solid waste will be required to collect and separately store the recyclable materials. Further, trash collected under the franchise program must be recycled and cannot merely be disposed of after collection.

Plaintiffs are four businesses which currently collect residential waste. All plaintiffs unsuccessfully participated in the bid process. Thus, under the franchise plan, none of the plaintiffs would be permitted to collect residential waste anywhere in the City.

The City contends that it has the police power to establish the franchise program pursuant to 24 V.S.A. § 2202a, a component of Act 78, and also under its general police powers. Plaintiffs contend that the City has no power to implement the franchise system.

## DISCUSSION

### I. 24 V.S.A. § 2202a

The City contends that 24 V.S.A. § 2202a confers the authority for the franchise program. Section 2202a provides as follows:

> Municipalities are responsible for the management and regulation of storage and collection of solid wastes within their jurisdictions in conformance with the state solid waste management plan authorized under chapter 159 of Title 10. Municipalities may issue local franchises and may make, amend, or repeal rules necessary to manage their storage and collection of solid waste materials within their limits and may impose penalties for violations thereof, provided that the rules are consistent with the state plan and rules promulgated by the secretary of the agency of natural resources under chapter 159.

Plaintiffs place much emphasis on the last phrase of § 2202a which requires municipal rules to conform to the state plan. We agree with plaintiffs that this section limits rather than expands the authority of municipalities to regulate solid waste. It is clear that any municipal regulation in this area must be consistent with the state plan promulgated by the Secretary.

The state plan grants the Secretary the authority to determine which programs should be conducted at the state level, regional level, or local level. Upon examination of the plan, it is apparent that Act 78 places responsibility for solid waste planning on the regional planning commissions, rather than at the local level. *See* Plan 1–5. For example, the Secretary has stated that:

> Act 78 mandates and finances a new planning partnership among municipalities, solid waste districts, regional planning organizations, and the State of Vermont ... The plans are to to be developed by the regions and comprise the

foundation for long-term solid waste management. *See* Plan 1–1. To the contrary, the implementation of solid waste programs is a matter for a formal legal entity, such as a solid waste district, and not for a regional planning commission. *See* Plan 1–5. Thus, each region must establish regional entities for the purpose of implementing regional programs. Indeed, 24 V.S.A. § 2202a(c) requires municipalities to join or participate in a solid waste district or a regional planning commission.

The state plan devotes a chapter to recycling. After reviewing the plan, we agree with plaintiffs that this chapter envisions that recycling efforts be undertaken on a regional, rather than municipal, level. *See* Plan 1–35. For example, the Secretary states that "each region must define recycling goals ..." and that "the region must specify the time frame and incentive system that will be used to achieve the [recycling] goals ..." *Id.* Nowhere does the plan mention that recycling is to be a local responsibility. *See* Plan 1–35.

Unquestionably, the City's franchise program seeks to regulate recycling. Pursuant to 24 V.S.A. § 2202a(a), all municipal regulations involving solid waste must conform with the state plan. Because the state plan discusses recycling, any municipal regulations that involve recycling—in this case the City's franchise program—must also be consistent with the state plan. As mentioned above, the state plan establishes that the planning of recycling efforts is to be done at the regional level, and the implementation of recycling efforts is to be done through a formal legal entity, such as a solid waste district.

We agree with plaintiffs that a single municipality, acting alone, does not have the authority to implement its own recycling plan, even though it is in conjunction with the regulation of residential solid waste. The City belongs to the Rutland County Solid Waste District (hereinafter "District"), which has the power to enact regional ordinances. *See* District Charter, Art. 1, § 5(m). We note that although executives of the District assisted in preparing the bid package for the City's franchise program, the District has never approved the franchise program. Thus, because the state plan does not confer authority on municipalities to franchise a curbside recycling program or enact recycling measures singlehandedly, but rather contemplates a regional effort, the City's franchise program, which was ratified only by the Board of Aldermen of the City of Rutland, cannot be authorized by 24 V.S.A. § 2202a.

■ In addition, we note that even though 24 V.S.A. § 2202a(a) states that "[m]unicipalities may issue local franchises," this does not authorize the City to issue exclusive franchises. We believe that had the Legislature intended exclusive franchises, it could have made that meaning clear. Thus, we conclude that no provision of 24 V.S.A. § 2202a authorizes the City to implement the franchise program.

## II. General Police Power

■ The City argues that even if its exclusive franchise program is not authorized by 24 V.S.A. § 2202a, municipalities possess general police powers to regulate trash collection in the manner undertaken here. We disagree.

■ As plaintiff points out, Vermont courts, unlike other "home rule" states, strictly construe police powers granted to municipalities. *See Hinesburg Sand & Gravel Co. v. Town of Hinesburg,* 135 Vt. 484, 380 A.2d 64 (1977); *E.B. & A.C. Whiting Co. et al. v. City of Burlington,* 106 Vt. 446, 175 A. 35 (1934). The court in *Hinesburg* stated that:

> Fundamental to a decision here is the general proposition that, absent a home rule constitutional provision, a municipality has only those powers and functions specifically authorized by the legislature, and such additional functions as may be incident, subordinate, or necessary to the exercise thereof.

*Id.* at 485–86, 380 A.2d 64. Vermont is not a "home rule" state. Thus, any ambiguity as to whether a municipality possesses the authority for a given act is construed against the municipality. *See E.B. & A.C.*

*Whiting, supra; State v. Page,* 112 Vt. 326, 331, 24 A.2d 346 (1942). We agree with plaintiffs that the exclusive nature of the franchise program is not implicit in the City's charter, and that therefore, the charter's silence must be construed against the City. Consequently, we conclude that the City possesses no general police power to implement its exclusive franchise program for trash collection.

### CONCLUSION

For all the reasons stated herein, defendant's motion for summary judgment is hereby DENIED, and plaintiffs' motion for summary judgment is hereby GRANTED.

SO ORDERED.