STATE OF VERMONT
SUPERIOR COURT — ENVIRONMENTAL DIVISION

|  | { |  |
|---|---|---|
| In re All Metals Recycling, Inc. | { | Docket No. 171-11-11 Vtec |
| Discretionary Permit Application | { | |
|  | { | |

## Decision on Motion for Summary Judgment
## and Motion to Amend Statement of Questions

Before us is an application for a discretionary zoning permit, submitted by Appellee Riggs Properties and Interested Person the Town of Williston, Vermont (Applicants), seeking approval for Appellee All Metals Recycling, Inc. (All Metals) to establish an outdoor storage area and install a scale house and scale at 38-42 Dorset Lane in the Town of Williston, Vermont (the Town) to conduct what the Town terms a "metals recycling operation." After a hearing, the Town of Williston Development Review Board (the DRB) granted the permit with conditions. Darlene Ashley, John Chandler, James Babcock, Jennifer Ashley, William Babcock, Shawn Chapman, Wayne Burnett, Jeannine Burnett, Patty Shortsleeves, George Shortsleeves, Gary Boutin, Michael Burnett, and Mark Burnett (Neighbors) appeal the DRB's decision and have filed a Statement of Questions including nine Questions.

Now pending before the Court is the Town's motion for summary judgment on all nine questions in Neighbors' Statement of Questions. Neighbors have filed a memorandum opposing summary judgment, to which the Town has replied. Also before the court is Neighbors' motion to amend their Statement of Questions, to which the Town has filed a memorandum in opposition.

The Town is represented by Paul S. Gillies, Esq. Neighbors are represented by Hobart F. Popick, Esq. All Metals Recycling, Inc., represented by Robert F. O'Neill, Esq., has not submitted any filings regarding this motion.

1

## Factual Background

For the sole purpose of putting the pending motions into context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

1. All Metals operates a facility at 38-42 Dorset Lane in the Town of Williston, Vermont. While Applicants consider the facility to be a metals recycling operation, Neighbors dispute the extent and nature of the activities All Metals conducts or proposes to conduct on the property.

2. While some of All Metals' facility operates on property owned by Riggs Properties, at some time in the past, All Metals' operations were established on or expanded onto the Town's adjacent property.

3. Pursuant to the Unified Development Bylaw for the Town of Williston, Vermont (the Bylaw), the subject property is located in the Town's Gateway Zoning District North.

4. All Metals was operating without a town or state zoning permit when some of the Neighbors contacted the Town with concerns about its unpermitted operations.

5. At the request of the Town Zoning Administrator, the Town and Riggs Properties applied for a discretionary permit, designating All Metals as "Facility Operator." Both Gary Riggs, as representative of Riggs Properties, and Williston Town Manager Richard McGuire, as representative of the Town, signed the application. Therefore, according to the Town, Riggs Properties and the Town are the only applicants in this matter. Neighbors dispute who the proper applicants are, but do not address whether they believe that All Metals is also an applicant.

6. On October 25, 2011, the DRB considered and approved Discretionary Permit Application DP 12-05 with conditions.

7. Neighbors, who participated in the October 25 DRB hearing, thereafter timely appealed the DRB's decision to this Court.

## Motion for Summary Judgment

Presently before the Court is the Town's motion for summary judgment on all nine questions in Neighbors' Statement of Questions. We will grant summary judgment for a moving party if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3) (2011)

(amended 2012)[1]; see V.R.E.C.P. 5(a)(2). In our examination of the facts, we give the non-moving party the benefit of all reasonable doubts and inferences, and accept as true all factual assertions made in opposition "so long as they are supported by affidavits or other evidentiary material." Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356.

## I.     Questions 1 and 2

Question 1 of Neighbors' Statement of Questions essentially asks whether All Metals previously engaged in unpermitted activities on the subject property. Assuming the answer to Question 1 to be "Yes," Question 2 of Neighbors' Statement of Questions asks whether the Town must commence an enforcement proceeding against All Metals based on its prior unpermitted activities on the subject property. Because we determine as a matter of law that the Town is not required to commence an enforcement proceeding against All Metals even if it had engaged in unpermitted activities, we need not determine whether All Metals did in fact engage in the alleged unpermitted activities. Accordingly, we decline to analyze Question 1 and proceed instead to an analysis of Question 2.

In its motion for summary judgment, the Town argues that 24 V.S.A. § 4452 does not require the Town to issue a notice of violation or initiate an enforcement proceeding for All Metals' previous unpermitted activities. Neighbors respond that the plain language of Section 4452 requires enforcement of the Bylaw with respect to All Metals' past activities.[2] We interpret a zoning ordinance using the familiar rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. We will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. If the plain language resolves the interpretive conflict, "there is no need to go further, always bearing in mind that the paramount function of the court is to give effect to the legislative intent." Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986).

---

[1] We note that an updated version of V.R.C.P. 56 took effect on January 23, 2012. We analyze this motion, however, under the previous version of the rule because that version was in effect at the time the pending motion was filed, and, at any rate, the rule change does not affect our analysis here.

[2] In Question 2 of their Statement of Questions, Neighbors refer to both the Bylaw and Vermont state law to argue that the Town must commence an enforcement proceeding against Applicants. Neighbors do not cite in their Statement of Questions or their statement in opposition to summary judgment, however, any specific provision of the Bylaw requiring punitive enforcement of Applicant's engagement in unpermitted activities. We therefore address only Vermont state law in our discussion above.

When violation of a zoning bylaw occurs, "the administrative officer shall institute . . . any appropriate action, injunction, or other proceeding to prevent, restrain, correct, or abate that . . . use, or to prevent, in or about those premises, any . . . use constituting a violation." 24 V.S.A. § 4452. The plain language of 24 V.S.A. § 4452 thus gives the administrative officer discretion to institute "any appropriate action" that might cure a violation. See In re Letourneau, 168 Vt. 539, 549 (1998) ("Although a zoning administrator must enforce the zoning ordinance, the nature of the remedy sought is discretionary.").

Neither party disputes that the Town did not pursue an injunction or court action to prevent All Metals from engaging in any unpermitted activities on the subject property. Instead, rather than penalize All Metals, the Town sought compliance by asking All Metals to apply for a permit, which Riggs Properties and the Town, as landowners, did, naming All Metals as the project operator. The request for an application was an attempt to correct or abate the violation, and therefore, was an "appropriate action" in accordance with 24 V.S.A. § 4452. Accordingly, we **GRANT** summary judgment to the Town on Question 2. In addition, because no enforcement action has been filed with this Court we do not analyze whether All Metals previously engaged in unpermitted activities, and therefore we **DISMISS** Question 1.

## II. Questions 3, 4, and 5

Questions 3, 4, and 5 of Neighbors' Statement of Questions raise the issue of whether the Bylaw prohibits Applicant's proposed use of the subject property. Specifically, the Questions ask whether the proposed use falls within the definition of "Waste Management and Remediation Services" as defined in the Bylaw by reference to the North American Industry Classification System (NAICS). See Bylaw Table 33.A.

The Town avers that the use proposed in its discretionary permit application, "existing metals recycling operation," qualifies as "Waste Management and Remediation Services," a conditional use entitled to a discretionary permit in the Gateway Zoning District North. Neighbors contend that prior and current activities on the site indicate that the proposed use actually falls under the definition of "Recyclable Material Merchant Wholesalers," a use the Bylaw does not specifically permit and consequently prohibits. See Bylaw Table 33.A ("Uses that are not specifically permitted are prohibited."). Thus, the NAICS classification under

4

which the use appropriately falls may determine whether Applicants are entitled to a zoning permit.

The definition of "Waste Management and Remediation Services" includes "establishments . . . operating materials recovery facilities (i.e., those that sort recyclable materials from the trash stream) . . . ." (Town's Motion for Summary Judgment, Ex. 3, filed Dec. 15, 2011.) It further specifies that "[t]here are three industry groups within the subsector that separate these activities into waste collection, waste treatment and disposal, and remediation and other waste management." Id. The definition excludes establishments that engage primarily in sewage disposal and long-range hauling, as well as "some activities that appear to be related to waste management . . . [f]or example, . . . waste management consulting services . . . ." Id.

In contrast, "Recyclable Material Merchant Wholesalers" "comprises establishments primarily engaged in the merchant wholesale distribution of automotive scrap, industrial scrap, and other recyclable materials." (Town's Motion for Summary Judgment, Ex. 2, filed Dec. 15, 2011.) The definition cross-references two other types of establishments falling under different NAICS classifications: those that "[d]ismantl[e] motor vehicles [to sell] used parts" ("Motor Vehicle Parts (Used) Merchant Wholesalers") and those "where commingled recyclable materials, such as . . . metals are sorted into distinct categories" ("Materials Recovery Facilities").

Again, we emphasize that any activities All Metals may or may not have conducted prior to the DRB's granting of a discretionary permit have no bearing on the proceedings currently before the Court. This Court must consider only Applicants' proposed use, as stated on its Discretionary Permit Application. See 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g); In re Torres, 154 Vt. 233, 235 (1990) ("The reach of the superior court in zoning appeals is as broad as the powers of a zoning board of adjustment or a planning commission, but it is not broader.").

Even with this limited scope, however, Neighbors have raised a genuine issue of material fact as to whether Applicants' proposed use will include activities which are properly classified under the "Recyclable Material Merchant Wholesalers" NAICS definition or under the "Waste Management and Remediation Services" NAICS definition. In their discretionary permit application, Applicants described the project as seeking to "accommodate an existing metals recycling operation." (Town's Motion for Summary Judgment, Applicant's

5

Discretionary Permit Application Form, Ex. 4, filed Dec. 21, 2011.) On the facts before us, Applicants' application is worded vaguely enough to support either the Town's or Neighbors' favored constructions.

The Town describes All Metals' facility as a "scrap metal recycling facility," which "is recycling washing machines and other metals, not including motor vehicles, restoring them to useful life and selling them, or disposing of them as waste metal products."[3] (Town's Statement of Material Facts ¶¶ 1, 7, filed Dec. 15, 2011.) The Town does not address whether All Metals plans to wholesale the materials it recycles, however. Further, the Town has provided no evidence in the form of answers to interrogatories, depositions, or affidavits indicating the precise uses to which All Metals intends to put the subject property.

Neighbors respond with an affidavit averring that All Metals "holds itself out as being in the business of buying scrap metal . . . as well as purchasing and removing junk cars." (Affidavit of Mark Burnett ¶ 4, filed Feb. 1, 2012.) Neighbors have also submitted photos purportedly showing "junk cars" on Applicant's premises as late as Fall of 2011. (Id., ¶ 10; attachments to Neighbors' Ex. A.) From their filings, we understand Neighbors' argument to be not only that All Metals has engaged in these activities in the past, but that All Metals intends to continue to engage in these activities in the future.

Because Neighbors have raised genuine issues of material fact as to what activities All Metals will conduct if its discretionary permit is approved, we **DENY** summary judgment to the Town on Questions 3, 4, and 5.

## III.    Questions 6 and 7

The Town asserts that Questions 6, 7, and 8 are mere quibbles over who should have signed the permit application. Neighbors have sought to clarify:

> "Questions 6-8 address whether Applicant is eligible for a permit in the absence of a proper, enforceable lease agreement allowing All Metals to use Town property for private, commercial purposes, and to the extent the Town lacks the authority to agree to such a lease, asks whether the Town has standing to apply for the permit in issue." (Neighbors' Opposition to the Town of Williston's Motion for Summary Judgment 12, filed Feb. 1, 2012.)

---

[3] As noted above, the Court will not consider Applicant's prior activities when reviewing Applicant's current application for a discretionary permit. We construe the Town's arguments here, however, as indicating the uses to which Applicant plans to put its property in the future.

We begin our analysis with Questions 6 and 7 and address Question 8 below.

Question 6 asks if "any Applicant [is] eligible for a Discretionary Permit under the Bylaw . . . in the absence of a proper interest in the portion of the subject property that is owned by the Town of Williston." (Neighbors' Statement of Questions, filed Dec. 8, 2011). Question 7 asks if a permit may issue "where one or more of the Applicants has no ownership interest in a portion of the subject property . . . ." Id. Viewing Questions 6 and 7 in the light most favorable to Neighbors as non-movants, we read them to ask whether All Metals can be considered an "applicant" for a discretionary permit under the Bylaw without some form of lease or other agreement between All Metals and the Town giving All Metals some interest in some portion of the subject property.[4]

Under the Bylaw, a permit applicant "is, by definition, the owner or owners of the property on which development is proposed." Bylaw § 46.3.12. Accordingly, discretionary permit applications "must be signed by the owner of the land on which the development is proposed or by a trustee or guardian of the owner." Bylaw § 6.4.1. When "the proposed development will involve more than one property, the owners of all lots or parcels involved must sign the application . . . ." Id. There is nothing in the Bylaw that requires a leaseholder or non-landowner's signature.

All Metals' operations occur on two parcels of property: one owned by Riggs Properties and one owned by the Town. All Metals is named on the application as the Facility Operator but is not a landowner. (See Town's Motion for Summary Judgment, Applicant's Discretionary Permit Application Form, Ex. 4, filed Dec. 21, 2011.) Because the Town owns part of the subject property, the Bylaw required its representative to sign the application form, and the Town Manager, as representative of the Town, did so. Because All Metals is not a landowner, nothing in the Bylaw required it to also sign the application form, and nothing in the Bylaw suggests that All Metals must be considered an "applicant."

---

[4] Because they refer to "applicants," we also read Questions 6 and 7 to ask whether Riggs Properties, as an "applicant," is required to have some interest in the Town's land. We assume, however, that, in submitting the discretionary permit application, Riggs Properties applied only for All Metals' activities on its own land and was not seeking permission for All Metals to engage in activities on the Town's land. Gary Riggs, as representative of Riggs Properties, signed the application form, as required by Bylaw § 6.4.1. Riggs Properties was therefore a proper applicant as to the property that it owns.

Thus, giving Neighbors the benefit of all reasonable doubts and inferences in our interpretation of Questions 6 and 7, our review of the Bylaw reveals that it does not require that All Metals have any property interest in the Town's land in order for the Town to apply for a discretionary permit. Accordingly, all appropriate applicants signed the discretionary permit application form, and we **GRANT** summary judgment to the Town on Questions 6 and 7, concluding as a matter of law that both the Town and Riggs Properties were proper applicants for the discretionary permit at issue.

## IV.    Question 8

Question 8 asks whether, "[t]o the extent the Town of Williston is an Applicant," the Town may "be issued [a Discretionary Permit] to conduct a private, for-profit enterprise on public property." We interpret Neighbors' Question 8 to ask whether the Town's constitutionally and statutorily allotted powers include letting All Metals conduct its activities on Town property, with or without a lease agreement.[5] (See Neighbors' Opposition to the Town of Williston's Motion for Summary Judgment 13, filed Feb. 1, 2012.)

In Vermont, "a municipality has only those powers and functions specifically authorized by the legislature, and such additional functions as may be incident, subordinate or necessary to the exercise thereof." Hinesburg Sand & Gravel Co. v. Town of Hinesburg, 135 Vt. 484, 486 (1977) (holding a Town's operating a gravel pit in support of road maintenance to be one such function). If the primary purpose of a public expenditure is to serve a public purpose, the expenditure is lawful. Bates v. Bassett, 60 Vt. 530 (1888). If the primary purpose of the expenditure is to promote a private end, however, the expenditure is illegal. Id. Thus, a public expenditure may only promote a private purpose if the private purpose is incidental or subordinate to a public purpose. See Hinesburg Sand & Gravel, 135 Vt. at 486; see also Bates, 60 Vt. at 530 (stating that a public purpose must not be "'set up as a mere pretext to conceal a private purpose").

---

[5] We will not issue an advisory opinion resulting from hypothetical facts. In re Appeal of 232511 Investments, Ltd., 2006 VT 27, ¶ 19. We therefore will not rule on whether the Town is eligible in the abstract "to conduct a private, for-profit enterprise on [its] property," as Question 8 asks as worded, because the Town is not proposing to conduct any activity itself, but rather to allow All Metals to conduct an activity on Town land.

8

Here, the Town argues that a lease with All Metals will further a public purpose because 24 V.S.A. § 2202a both authorizes and requires municipalities to take responsibility for waste management services, services that All Metals will provide. Neighbors contend that All Metals' activities are commercial in nature and therefore advance private ends that are neither incidental nor subordinate to any legitimate Town function. Neighbors therefore argue that, under Hinesburg Sand & Gravel and Bates, the Town is ineligible for a discretionary permit for All Metals' activities.

Had the Town provided a lease with All Metals to the Court, it is possible our analysis would have ended in its favor. See 24 V.S.A. § 2403 ("The selectmen may lease such lands as they deem beneficial, reserving rents for the same which shall be annually paid into the treasury of the town."); see also L'Esperance v. Town of Charlotte, 167 Vt. 162, 169 (1997) ("Towns have the power to hold and manage real property, and this power includes the authority to lease its real estate as necessary for public purposes." (citations omitted)). "Reasonable rent" meets the "public purpose" requirement. Id. at 165. Absent a lease, however, and having insufficient evidence before us to discern what public benefit, if any, will arise from All Metals' operations on Town land, we cannot make a determination on Question 8 as a matter of law. Consequently, genuine issues of material fact exist, and we must **DENY** the Town's motion for summary judgment on Question 8.

## V.     Question 9

Neighbors' Question 9 asks whether, "to the extent not covered by" Neighbors' first eight Questions, Applicant is "eligible for a Discretionary Permit under the Bylaw." (Neighbors' Statement of Questions, filed Dec. 8, 2011.) The Town argues that the general statement in Question 9 cannot be used to supplement the other Questions in the Statement of Questions. We agree.

If an appellant wishes to have an issue addressed on appeal, he or she must specifically raise the issue in a Statement of Questions. Reporter's Notes, V.R.E.C.P. 5(f) ("The statement [of questions] functions like a pleading to limit the issues that are to be heard on the appeal . . . ."); In re Garen, 174 Vt. 151, 156 (2002) ("[a]n appeal to the environmental court is confined to the issues raised in the statement of questions filed pursuant to an original notice of appeal."). The Statement of Questions not only serves to establish the scope of the appeal but also provides

notice of the issues to the court and the parties. See <u>In re Musty Permit</u>, No. 174-10-10 Vtec, slip op. at 2 (Vt. Super. Ct. Env. Div. July 28, 2011) (Durkin, J.); see also <u>In re Frostbite Mine</u>, No. 12-1-11 Vtec, slip op. at 2 (Vt. Super. Ct. Env. Div. November 3, 2011) (Durkin, J.) ("A statement of questions also serves to set the parameters of the appeal.").

Question 9 fails to limit the scope of appeal; in fact, it expands it. Neighbors' eight other Questions each raise specific issues of state and local law. On the other hand, as the Town has noted, Question 9 apparently seeks to preserve any issue Neighbors did not raise in their eight other questions. Neighbors have not offered argument or evidence to dispute this characterization. Moreover, Question 9 is so broad and ambiguous as to provide no notice to Applicant or the Court of the issue or issues Neighbors wish to address. See <u>Musty Permit Appeal</u>, No. 174-10-10 Vtec, slip op. at 2. ("It would be unfair and prejudicial to the applicant here, and to any other potential parties who have not joined in this appeal, for the Court to now take up issues they had no notice would be adjudicated.").

In conclusion, while Neighbors' first eight questions provide clear notice to this Court and all parties of the specific issues on appeal, Question 9 serves only as a placeholder for many possible issues which were not identified or specified at the preliminary stage of this appeal. We therefore **DISMISS** Question 9.

### Motion to Amend Statement of Questions

Also before the Court is Neighbors' motion to amend their Statement of Questions to add a Question 10 as follows:

> Should Applicants have been denied a Discretionary Permit where Applicants failed to demonstrate adequate provision for off-street parking and loading as required by Chapter 14 of the Bylaw?

Applicants contend that this Court is prohibited from granting Neighbors' motion to amend.

"Like motions to amend a complaint under V.R.C.P. 15, motions to amend a Statement of Questions are to be liberally granted, so long as they do not prejudice the other party." <u>In re Ridgewood Estates Homeowners Ass'n</u>, No. 57-4-10 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. Jan. 26, 2011) (Wright, J.). Prejudice may exist, for example, where a motion to amend was submitted after trial, after a statement of questions had already been amended, or after a motion for summary judgment was denied. See <u>In re Huntington Remodeling Application</u>, No. 210-10-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. Nov. 5, 2008) (Durkin, J.).

Here, granting Neighbors' motion to amend will not prejudice the parties as this matter is in its early stages. No hearings have been set, and no discovery has occurred. Nor has the Statement of Questions previously been amended. Applicants contend that prejudice will result because a motion for summary judgment on the first nine Questions in Neighbors' Statement of Questions is pending. As discussed above, however, several of the original Questions remain before this Court. The addition of another Question will not prejudice Applicants. Nor have Applicants presented any evidence that Neighbors acted in bad faith in seeking to amend the Statement of Questions. See Verizon Wireless Barton Act 250 Permit Telecommunications Facility, No. 6-1-09 Vtec, slip op. at 11 (Vt. Envt. Ct. Feb. 2, 2010) (Durkin, J.) (stating that a motion to amend is "typically granted when it 'is neither frivolous nor made as a dilatory maneuver or in bad faith.'" (quoting In re Guardianship of L.B., 147 Vt. 82, 84 (1984)). Finally, the fact that Neighbors filed their motion to amend well beyond the 20-day time limit for filing a statement of questions does not affect our analysis. See Huntington, No. 210-10-07, slip op. at 4 (allowing a motion to amend "many months" after filing the original statement of questions).

Because amending Neighbors' Statement of Questions to add Question 10 will not result in prejudice to the parties, we **GRANT** Neighbors' motion to amend. However, we want to caution the parties that because a statement of questions functions to establish and limit the scope of litigation in advance of trial, see Reporter's Notes, V.R.E.C.P. 5(f) ("The statement functions . . . to limit the issues that are to be heard on the appeal."), motions to amend should not serve as a replacement for a timely and complete statement of questions.

## Conclusion

For the reasons detailed above, we **GRANT** the Town's motion for summary judgment on Questions 2, 6, and 7, **DENY** the Town's motion for summary judgment on Questions 3, 4, 5, and 8, and **DISMISS** Questions 1 and 9 of Neighbors' Statement of Questions. All parties should prepare to present evidence on the issue raised by Questions 3, 4, and 5—that is, whether Applicants' proposed use and its associated activities can be appropriately categorized as "Waste Management and Remediation Services" as defined in the Bylaw with reference to the NAICS—and Question 8, regarding whether the proposed project serves a public purpose.

We also **GRANT** Neighbors' motion to amend their Statement of Questions by adding the proposed Question 10. As such, all parties shall also prepare to present evidence on the

11

issue raised by Question 10 – that is, whether Applicants' proposal demonstrates adequate provision for off-street parking and loading.

The Court will now set this matter for trial. On or before Friday, May 4, 2012, the parties shall provide to the Court, in writing, their dates of unavailability for a one-day trial in July, August, and September, 2012. If the parties believe that more than one day of trial will be necessary, they should so indicate.

Done at Berlin, Vermont this 23rd day of April, 2012.

_____

Thomas G. Walsh,
Environmental Judge
